JUSTIN E. GRAY, CA Bar No. 282452
    jegray@foley.com
FOLEY & LARDNER LLP
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130
TELEPHONE:   858.847.6700
FACSIMILE:      858.792.6773

PAUL V. STORM (*Pro Hac Vice* Pending)
    pvstorm@foley.com
TERRELL R. MILLER (*Pro Hac Vice* Pending)
    tmiller@foley.com
FOLEY GARDÈRE
FOLEY & LARDNER LLP
2021 MCKINNEY AVENUE, SUITE 1600
DALLAS, TX 75201-3340
TELEPHONE:      214.999.3000
FACSIMILE:      214.999.4667

Attorneys for Plaintiff
INDECT USA CORP.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDECT USA CORP., | Case No. **'18 CV 2409 LAB WVG** |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES** |
| v. | |
| PARK ASSIST, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff INDECT USA Corp. ("INDECT" or "Plaintiff"), through its undersigned counsel, hereby complains and alleges against Defendant Park Assist, LLC ("Park Assist" or "Defendant") as follows:

### NATURE OF THE ACTION

1.      On September 5, 2018, Park Assist initiated sham litigation in this Court alleging infringement of United States Patent No. 9,594,956 ("the '956 Patent") against San Diego County Regional Airport Authority ("San Diego") and Ace Parking Management, Inc. ("Ace Parking") based on their operation of a parking guidance system manufactured and sold by INDECT at the San Diego International Airport's Terminal 2 Parking Plaza (the "Airport Parking System").

2.      Park Assist's case against San Diego and Ace Parking, which is styled as *Park Assist, LLC v. San Diego County Regional Airport Authority et al.*, Case No. 3:18-cv-02068-BEN-MDD (the "Sham Case"), is objectively baseless and conceals Park Assist's attempt to interfere directly with INDECT's business relationships.  Indeed, no reasonable litigant (let alone, Park Assist) could expect success on the merits because the Airport Parking System lacks at least ten (10) attributes required for infringement of the '956 Patent, specifically:

(i)     it lacks a graphical user interface for the UPSOLUT system;

(ii)    it does not display thumbnail images of any parking spot from the UPSOLUT system;

(iii)   it does not display thumbnail images based on an occupied status;

(iv)    it does not decide whether an occupied status is incorrect;

(v)     it cannot correct an occupied status;

(vi)    it cannot correct an occupied status based on a visual review of a thumbnail image on a graphical user interface;

(vii)   it does not extract a permit identifier from any image;

(viii)  it does not store permit identifiers;

(ix)    it does not compare an extracted permit identifier to a stored parking permit identification; and

1

(x) it does not initiate an infringement process for a vehicle having a permit identifier that fails to coincide with at least one stored parking permit identification.

3. Before filing the Sham Case, Park Assist knew or should have known pursuant to its obligations under Federal Rule of Civil Procedure 11 that the Airport Parking System lacks numerous attributes required for infringement of the '956 Patent.

4. Nevertheless, less than twenty-four (24) hours after filing the Sham Case, Park Assist began telling INDECT's customers and potential customers about the Sham Case and threatening similar litigation against them if they did business with INDECT.

5. INDECT brings this action for declaratory judgment against Park Assist, the purported owner of the '956 Patent, seeking a declaration that neither INDECT nor users of INDECT's products have infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any claim of the '956 Patent. A true and correct copy of the '956 Patent, entitled "Method and System for Managing a Parking Lot Based on Intelligent Imaging" and listing Park Assist as the assignee, is attached to this Complaint as **Exhibit A**.

6. INDECT further brings this action because Park Assist has engaged in unfair and unlawful anticompetitive behavior with the intent to wrongfully gain business and market share and cause harm to INDECT by, *inter alia*, falsely and in bad faith claiming that INDECT infringes the '956 Patent and bringing sham litigation for infringement of the '956 Patent against users of INDECT's products.

7. Because INDECT does not infringe any claim of the '956 Patent and Park Assist should not be permitted to use sham litigation for infringement of the '956 Patent as a cudgel to threaten innocent users and prospective users of INDECT's products and tortiously interfere with INDECT's business and prospective economic advantage, INDECT seeks this Court's intervention requesting declaratory relief, preliminary and permanent injunctive relief, and damages against Park Assist.

## PARTIES

8.     Plaintiff INDECT USA Corp. is a Texas corporation with its principal place of business located at 1510 Randolph Street, Suite 501, Carrollton, Texas 75006.

9.     Plaintiff is a wholly-owned subsidiary of its parent company, INDECT Electronics & Distribution GmbH, an Austrian limited liability company headquartered in Austria.

10.     Defendant Park Assist, LLC is a Delaware limited liability company with its principal place of business located at 57 W 38th Street, 11th Floor, New York, New York 10018.

11.     Upon information and belief, Defendant is a wholly-owned subsidiary of its parent company, TKH Group NV, a Dutch public limited company headquartered in the Netherlands.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 1338(b) and 15 U.S.C. § 1121 as this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

13.     This Court has personal jurisdiction over Park Assist, and venue is proper in this judicial district under 28 U.S.C. § 1391.

14.     Park Assist has established minimum contacts within the forum such that the exercise of jurisdiction over Park Assist will not offend traditional notions of fair play and substantial justice.

15.     Park Assist conducts business throughout the United States, and actively transacts business in this judicial district by selling its products in this district.

16.     A substantial part of the events giving rise to INDECT's claims occurred in this district.

17.     In addition, Park Assist has submitted to the personal jurisdiction of this Court by purposefully availing itself of this Court's benefits and protections in initiating the Sham Case.

18.     The Sham Case is related to the instant case because it is predicated on the same factual nucleus as INDECT's claims against Park Assist, including Park Assist's sham litigation against San Diego and Ace Parking for infringement of the '956 Patent based on their operation of the Airport Parking System.

19.     The facts in this Complaint support jurisdiction and venue in this case.

## GENERAL ALLEGATIONS

20.     INDECT designs, manufactures, and services the world's most innovative parking guidance software and systems and is a leading provider of sensor-based parking guidance systems for the U.S. parking industry.

21.     INDECT's parking guidance systems combine the most advanced parking space sensors with industry-leading data management technology to offer drivers a safer, more convenient parking experience while helping parking owners operate their parking assets more efficiently and profitably.

22.     Among INDECT's suite of sensor-based parking guidance systems is a camera-based parking guidance system called the "UPSOLUT" system.

23.     The UPSOLUT system employs optical sensors for under-cover car parks that capture, monitor, and show the status of multiple parking spaces.

24.     The UPSOLUT system does not depend on human intervention to operate.

25.     An UPSOLUT sensor is installed on the ceiling of an under-cover car park in the center of the driveway and covers multiple parking spaces on either side of the sensor.

26.     Using INDECT's sophisticated detection processes and algorithms, the UPSOLUT sensor verifies whether a car parks on a configured space or whether the space is empty.

27.     The UPSOLUT sensor then makes an occupancy determination and uploads the information to the server.

28.     Depending on system settings, various changes to the indicator lighting may occur based on detecting occupancy or vacancy.

29.     All detection processes are carried out on-board by the UPSOLUT sensor processor, allowing the UPSOLUT sensor to operate correctly even if there is no network connection to the server.

30.     Park Assist and INDECT are direct competitors for camera-based parking guidance systems in the U.S. parking industry.

31.     Park Assist's camera-based sensors, however, are inferior to INDECT's UPSOLUT sensors.

32.     For example, INDECT's UPSOLUT sensor meets the Ingress Protection Rating "IP67" because it is protected from total dust ingress and immersion between fifteen (15) centimeters and one (1) meter in depth.  Park Assist's sensor does not.

33.     In addition, whereas INDECT's UPSOLUT sensor does not permit correction of an occupied status, Park Assist's sensor apparently requires it.

34.     Upon information and belief, in response to a request for proposal issued by San Diego in 2016 for a camera-based parking guidance system in connection with the new construction of the San Diego International Airport's Terminal 2 Parking Plaza (the "Airport Parking Plaza"), Park Assist submitted a bid proposing a parking guidance system that purportedly was the subject of the pending application for the '956 Patent.

35.     Park Assist's bid was not accepted.

36.     Park Assist's inferior products were not used.

37.     Instead, San Diego, through its general contractor, Swinerton Inc., accepted the bid submitted by Sentry Control Systems using INDECT's UPSOLUT system.

38.     Approximately fourteen (14) months after the March 14, 2017 issuance of the '956 Patent, the Airport Parking Plaza opened to the public, with Ace Parking providing parking management services and the Airport Parking System in operation.

39.     After the '956 Patent was issued, INDECT released an industry statement on May 19, 2017 stating some of the reasons why INDECT's parking guidance systems do

not infringe any claim of the '956 Patent (the "May 19, 2017 Statement").  A true and correct copy of the May 19, 2017 Statement is attached to this Complaint as **Exhibit B**.

40.    As the May 19, 2017 Statement explains, the '956 Patent only has two claims and only one independent claim—Claim 1, which generally relates to a method of managing a group of parking spaces that relies on human intervention to operate.

41.    The Abstract of the '956 Patent provides:

> To manage a plurality of parking spaces, one or more images are acquired, with each parking space appearing in at least one image. Periodically acquired images of occupancy and identity are used in directing a customer to a parked vehicle.  Periodically acquired images of just occupancy are used in controlling respective environmental aspects, such as illumination and ventilation, of the parking spaces.  For these purposes, the images are classified automatically as "vacant" or "occupied", and are displayed along with their classifications so that the classifications can be corrected manually.

42.    Claim 1 of the '956 Patent requires:

> A method of managing a plurality of parking spaces, comprising:
>
> (a) monitoring a parking space with an imaging device of an imaging unit;
>
> (b) detecting, by said imaging unit, occupancy of said parking space;
>
> (c) assigning said parking space, in which said occupancy was detected, an occupied status, wherein said occupied status is indicated by illuminating a first color of a multicolor indicator collocated with said imaging device, said first color predefined to determine said occupied status;
>
> (d) obtaining, as a result of said parking space having said occupied status, a single high resolution image of a vehicle occupying said parking space, said high resolution image obtained by said imaging device;
>
> (e) storing at least part of said high resolution image on a storage device;
>
> (f) displaying a thumbnail image of said parking space on a graphic user interface (GUI), said thumbnail image digitally processed from an image electronically communicated to said GUI from said imaging unit;

(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;

(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multicolor indicator to illuminate a second color, said second color predefined to indicate a vacant status;

(i) extracting from said high resolution image, by digital image processing, a permit identifier for said vehicle and comparing said permit identifier with at least one parking permit identification stored on said storage to determine a permit status of said parked vehicle; and

(j) initiating an infringement process for said vehicle having said permit identifier that fails to coincide with at least one of said at least one parking permit identification.

43.     As stated above, the May 19, 2017 Statement highlights some of the reasons why INDECT's parking guidance systems do not infringe any claim of the '956 Patent.

44.     For example, the May 19, 2017 Statement notes that element (g) of Claim 1 of the '956 Patent requires a "visual review" by a user of a thumbnail image of a space with an "occupied status" to determine whether that status is incorrect.

45.     INDECT's parking guidance systems, however, are fully automated and thus do not rely on human intervention to function properly.  In other words, they do not involve personnel performing a visual review of any particular space having an "occupied status" to determine whether the system is functioning correctly in real time.  As such, INDECT's parking guidance systems do not perform element (g) of Claim 1 of the '956 Patent.

46.     The May 19, 2017 Statement also notes that element (h) of Claim 1 of the '956 Patent requires correction of the occupied status if the thumbnail image shows that a given parking space is vacant.

7

47.   But, again, because INDECT's parking guidance systems are fully automated and thus do not use or rely on human intervention to function properly, they do not involve personnel reviewing thumbnail images and thus do not correct status by relying on such analysis.  As such, INDECT's parking guidance systems do not perform element (h) of Claim 1 of the '956 Patent.

48.   The May 19, 2017 Statement was provided to INDECT's existing and prospective customers in response to Park Assist's false communications and advertising to those same customers about INDECT's parking guidance systems purportedly infringing the '956 Patent.

49.   The May 19, 2017 Statement was disseminated at industry events and trade shows that Park Assist attended.

50.   Upon information and belief, before initiating the Sham Case, Park Assist received and/or was made aware of the May 19, 2017 Statement.

51.   The May 19, 2017 Statement clearly evidences that INDECT's parking guidance systems do not infringe any claim of the '956 Patent, and Park Assist has no good faith basis to contend that they do infringe or that the May 19, 2017 Statement is incorrect.

52.   Upon information and belief, Park Assist knew or should have known that the '956 Patent would not and did not cover, either literally or under the doctrine of equivalents, INDECT's parking guidance systems, including the UPSOLUT system.

53.   Nevertheless, even before the '956 Patent was issued, Park Assist began falsely and in bad faith claiming that INDECT's products would infringe the '956 Patent and communicating such false claims at industry events, trade shows, and elsewhere through, *inter alia*, press releases, online news and other media outlets, and Park Assist agents to INDECT's existing and prospective customers with whom INDECT had existing business relationships and/or a reasonable certainty of specific future dealings that would be economically profitable to INDECT.

54.   For example, Park Assist used the application for the '956 Patent to browbeat SKIDATA Inc. ("SKIDATA") into using Park Assist's products.

8

55.     More specifically, SKIDATA submitted and won a bid in connection with the Detroit Airport using Park Assist's products even though INDECT had proposed a price to SKIDATA that was much lower.

56.     Upon information and belief, SKIDATA decided to bid using Park Assist's products due to Park Assist's claims that INDECT's products would infringe the '956 Patent and Park Assist's threats to sue anyone using INDECT's products or any products other than Park Assist's for patent infringement.

57.     After the '956 Patent was issued, Park Assist doubled-down on its sham infringement allegations against INDECT by initiating the Sham Case against San Diego and Ace Parking based on their operation of the Airport Parking System, even though Park Assist knew or should have known that the Airport Parking System lacks at least ten (10) attributes required for infringement of the '956 Patent.

58.     The Airport Parking System does not infringe because it lacks a graphical user interface for the UPSOLUT system.

59.     The Airport Parking System does not infringe because it does not display thumbnail images of any parking spot from the UPSOLUT system.

60.     The Airport Parking System does not infringe because it does not display thumbnail images based on an occupied status.

61.     The Airport Parking System does not infringe because it does not decide whether an occupied status is incorrect.

62.     The Airport Parking System does not infringe because it cannot correct an occupied status.

63.     The Airport Parking System does not infringe because it cannot correct an occupied status based on a visual review of a thumbnail image on a graphical user interface.

64.     The Airport Parking System does not infringe because it does not extract a permit identifier from any image.

65.     The Airport Parking System does not infringe because it does not store permit identifiers.

9

66.   The Airport Parking System does not infringe because it does not compare an extracted permit identifier to a stored parking permit identification.

67.   The Airport Parking System does not infringe because it does not initiate an infringement process for a vehicle having a permit identifier that fails to coincide with at least one stored parking permit identification.

68.   Upon information and belief, before initiating the Sham Case, Park Assist knew or should have known that the Airport Parking System does not infringe any claim of the '956 Patent.

69.   Making matters worse, Park Assist has used the Sham Case to threaten similar litigation against others, including INDECT's existing and prospective customers, so that they would not do business with INDECT, even though INDECT's products do not include each required step of Claim 1 of the '956 Patent.

70.   Adding insult to injury, in the Sham Case, Park Assist did not even sue INDECT, the real party in interest as to Park Assist's controversy over the '956 Patent, choosing instead to only sue San Diego and Ace Parking, i.e., blameless users of INDECT's products.

71.   The reason for Park Assist's decision to not sue INDECT in the Sham Case is clear.

72.   Park Assist intended to eliminate competition for camera-based parking guidance systems in the U.S. parking industry and wrongfully gain business and market share for camera-based parking guidance systems from INDECT by making false and bad faith claims of patent infringement against INDECT's products and terrorizing INDECT's existing and prospective customers with sham litigation and threats of similar litigation, all the while avoiding INDECT—again, the real party in interest as to Park Assist's controversy over the '956 Patent—having any full and fair opportunity to present the Court and a jury with the truth, i.e., that INDECT's products do not infringe any claim of the '956 Patent.

73.   By way of its wrongful conduct, Park Assist has materially affected

10

consumers' purchasing decisions and materially threatened and harmed competition for camera-based parking guidance systems, thereby causing injury to consumers.

74.     Park Assist's wrongful conduct has also caused and continues to cause irreparable harm to INDECT.

75.     Not only has Park Assist tortiously interfered with INDECT's business and prospective economic advantage, but it has also caused loss of INDECT's goodwill and product image in the U.S. parking industry.

76.     Indeed, as a result of Park Assist's wrongful conduct, INDECT's biggest reseller has stopped promoting INDECT's UPSOLUT system to customers.

77.     Worse yet, upon information and belief, Park Assist has contacted representatives at two of the parking industry's leading consulting firms, Watry Design, Inc. ("Watry"), which was involved in the construction of the Airport Parking Plaza, and Walker Consultants, Inc. ("Walker"), advising them of the Sham Case.

78.     Upon information and belief, Park Assist further advised Watry and Walker against doing business with INDECT or else Park Assist would bring similar litigation against them and/or their clients for using INDECT's products and Watry and Walker, in turn, advised their clients of Park Assist's threats.

79.     Because Watry and Walker control who can and cannot bid on their clients' contracts, upon information and belief, Park Assist's wrongful communications about INDECT to those consulting firms have caused and continue to cause INDECT to lose opportunities to bid for contracts that INDECT would otherwise have had.

80.     In addition, INDECT's existing customers have demanded indemnification due to concerns about being sued by Park Assist, and prospective customers have demanded similar protections and renegotiated prices, thereby significantly reducing INDECT's profit margins.

81.     While INDECT has suffered harm as a result of Park Assist's conduct, Park Assist has gained benefits as a supplier of camera-based parking guidance systems to the U.S. parking industry that it would not have otherwise gained because, *inter alia*, Park

Assist's camera-based sensors are inferior to INDECT's UPSOLUT sensors.

82. Upon information and belief, Park Assist's current advertising efforts at industry events, trade shows, and elsewhere focus heavily on the Sham Case and the '956 Patent, and every presentation Park Assist now makes to customers and members of the U.S. parking industry prominently features the Sham Case and the '956 Patent.

83. Because INDECT's products do not infringe any claim of the '956 Patent and Park Assist should not be permitted to use sham litigation for infringement of the '956 Patent as a cudgel against innocent users of INDECT's products and to threaten INDECT's existing and prospective customers and tortiously interfere with INDECT's business and prospective economic advantage, INDECT seeks its day in Court to put an end to Park Assist's anticompetitive and bad faith campaign against INDECT and those who choose INDECT's products over Park Assist's inferior ones.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief Regarding Non-Infringement of the '956 Patent
by INDECT)

84. INDECT restates and incorporates by reference each of the allegations set forth above.

85. An actual and justiciable controversy exists between INDECT and Park Assist as to the non-infringement of the '956 Patent by INDECT.

86. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

87. In order to fully and finally resolve this controversy between the parties, INDECT requests the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '956 Patent has been or is infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, by INDECT through the manufacture, use, importation, sale, and/or offer for sale of INDECT's parking guidance systems, including INDECT's UPSOLUT system, and (ii) INDECT has the right to manufacture, use, import, sell, and/or offer to sell its

parking guidance systems in the United States.

88.    In addition, INDECT seeks its expenses and costs of court and reasonable attorney's fees as damages in this action under 28 U.S.C. § 2201 *et seq.* and as an exceptional case under 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

(Declaratory Relief Regarding Non-Infringement of the '956 Patent

by Users of INDECT's Products )

89.    INDECT restates and incorporates by reference each of the allegations set forth above.

90.    An actual and justiciable controversy exists between INDECT and Park Assist as to the non-infringement of the '956 Patent by users of INDECT's parking guidance systems.

91.    This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

92.    In order to fully and finally resolve this controversy between the parties, INDECT requests the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '956 Patent has been or is infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, by users of INDECT's parking guidance systems through the manufacture, use, importation, sale, and/or offer for sale of INDECT's parking guidance systems, including INDECT's UPSOLUT system, and (ii) users of INDECT's parking guidance systems have the right to use and operate INDECT's parking guidance systems in the United States.

93.    In addition, INDECT seeks its expenses and costs of court and reasonable attorney's fees as damages in this action under 28 U.S.C. § 2201 *et seq.* and as an exceptional case under 35 U.S.C. § 285.

## THIRD CLAIM FOR RELIEF

(Unfair Competition - Section 43 of the Lanham Act)

94.     INDECT restates and incorporates by reference each of the allegations set forth above.

95.     Park Assist has disparaged INDECT and its products with objectively baseless claims of patent infringement and used sham litigation for infringement of the '956 Patent and threats of similar litigation to discourage and/or retaliate against innocent users and prospective users of INDECT's products.

96.     Despite knowing that INDECT's parking guidance systems do not infringe any claim of the '956 Patent, in order to disparage INDECT and its products, Park Assist has claimed and continues to claim falsely and in bad faith that INDECT's products infringe the '956 Patent and has communicated and continues to communicate such malicious claims at industry events, trade shows, and elsewhere through, *inter alia*, press releases, online news and other media outlets, and Park Assist agents to INDECT's existing and prospective customers with whom INDECT had existing business relationships and/or a reasonable certainty of specific future dealings that would be economically profitable to INDECT.

97.     Park Assist's litigation against San Diego and Ace Parking is sham litigation because it is objectively baseless, such that no reasonable litigant could expect success on the merits, and conceals Park Assist's attempt to interfere directly with INDECT's business relationships.

98.     Park Assist initiated and has maintained the Sham Case in order to, *inter alia*, (i) burden users of INDECT's products with the substantial costs of litigation, (ii) create meritless doubt in the minds of INDECT's existing and prospective customers so that they will choose Park Assist's products over INDECT's superior products, (iii) drive out or exclude INDECT from the market for camera-based parking guidance systems by seeking an injunction that enjoins users of INDECT's products from continuing to use those products, (iv) disparage INDECT and its products with objectively baseless claims of

14

patent infringement, and (v) conceal Park Assist's attempt to interfere directly with INDECT's business relationships.

99.   As a result of the facts set forth above, Park Assist has violated and continues to violate the provisions of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and has caused and continues to cause irreparable harm to INDECT.

100.   Because INDECT has suffered and will continue to suffer irreparable harm for which INDECT has no adequate remedy at law, INDECT seeks a preliminary and permanent injunction under 15 U.S.C. § 1116 prohibiting Park Assist from continuing to engage in such wrongful conduct, and any and all other remedies available at law or in equity for the harm Park Assist's conduct has proximately caused to INDECT, including INDECT's compensatory damages in an amount to be proven at trial, treble damages, disgorgement of Park Assist's profits, expenses and costs of court, and reasonable attorney's fees as an exceptional case under 15 U.S.C. § 1117.

## JURY DEMAND

101.   INDECT hereby demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff INDECT USA Corp. respectfully prays for judgment against Defendant Park Assist, LLC as follows:

1.   That the Court enter a declaratory judgment in INDECT's favor against Park Assist as follows:

(a)   An order declaring that no claim of the '956 Patent has been or is infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, by INDECT through the manufacture, use, importation, sale, and/or offer for sale of INDECT's parking guidance systems, including INDECT's UPSOLUT system;

(b)   An order declaring that INDECT has the right to manufacture, use, import, sell, and/or offer to sell its parking guidance systems in the United States;

(c)   An order declaring that no claim of the '956 Patent has been or is

15

infringed, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, by users of INDECT's parking guidance systems through the manufacture, use, importation, sale, and/or offer for sale of INDECT's parking guidance systems, including INDECT's UPSOLUT system; and

(d)    An order declaring that users of INDECT's parking guidance systems have the right to use and operate INDECT's parking guidance systems in the United States.

2.    That the Court enter a preliminary injunction, to be made permanent after trial, enjoining Park Assist and all of its respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert from:

(a)    Falsely and/or misleadingly representing that INDECT's parking guidance systems infringe the '956 Patent;

(b)    Falsely and/or misleadingly representing that any users or prospective users of INDECT's parking guidance systems will be sued and/or otherwise held liable for infringement of the '956 Patent; and

(c)    Taking any adverse or legal action against users or potential users of INDECT's parking guidance systems based on or in relation to the allegations in this Complaint.

3.    That the Court enter an order requiring Park Assist to file with this Court within thirty (30) days from the entry of a preliminary injunction a declaration signed under penalty of perjury certifying the manner in which Park Assist has complied with the terms of the preliminary injunction.

4.    That the Court enter an order requiring Park Assist to correct any erroneous impressions persons may have derived concerning the characteristics and/or qualities of INDECT's products by issuing written corrections sent within thirty (30) days from the entry of the Court's order (with copies to INDECT) to all recipients of Park Assist's false and/or misleading communications, informing them:

(a)    That INDECT's parking guidance systems do not infringe, either

16

directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any claim of the '956 Patent;

(b)     That INDECT has the right to manufacture, use, import, sell, and/or offer to sell its parking guidance systems in the United States;

(c)     That users or prospective users of INDECT's parking guidance systems will not be sued and/or otherwise held liable for infringement of the '956 Patent;

(d)     That users of INDECT's parking guidance systems have the right to use and operate INDECT's parking guidance systems in the United States; and

(e)     That Park Assist has been adjudged to have engaged in unfair competition against INDECT and its parking guidance systems.

5.     That the Court find that this case is an exceptional case under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117.

6.     That the Court award INDECT its compensatory damages, treble damages, disgorgement of Park Assist's profits, and any other measure of damages or equitable relief resulting from Park Assist's wrongful conduct.

7.     That the Court award INDECT its expenses and costs of court, reasonable attorney's fees, and pre- and post-judgment interest at the highest rate allowed by the applicable law.

8.     That the Court grant INDECT any such other and further relief available at law or in equity as the Court may deem just and proper.

DATED:  October 19, 2018                    Respectfully submitted,


                                            */s/ Justin E. Gray*
                                            JUSTIN E. GRAY, CA Bar No. 282452
                                              jegray@foley.com
                                            FOLEY & LARDNER LLP
                                            3579 VALLEY CENTRE DRIVE, SUITE 300
                                            SAN DIEGO, CA 92130
                                            TELEPHONE:    858.847.6700
                                            FACSIMILE:     858.792.6773

                                            PAUL V. STORM (*Pro Hac Vice* Pending)
                                               pvstorm@foley.com
                                            TERRELL R. MILLER (*Pro Hac Vice*
                                            Pending)
                                               tmiller@foley.com
                                            FOLEY GARDERE
                                            FOLEY & LARDNER LLP
                                            2021 MCKINNEY AVENUE, SUITE 1600
                                            DALLAS, TX 75201-3340
                                            TELEPHONE:    214.999.3000
                                            FACSIMILE:     214.999.4667

                                            Attorneys for Plaintiff
                                            INDECT USA CORP.