FILED
AUG 12 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDECT USA CORP., <br><br> Plaintiff, <br><br> v. <br><br> PARK ASSIST, LLC, <br><br> Defendant. | Case No.: 3:18-cv-02409-BEN-MDD <br><br> **ORDER DENYING DEFENDANT PARK ASSIST'S MOTION TO DISMISS [Doc. 12]** |

Defendant Park Assist, LLC moves to dismiss Plaintiff Indect USA Corporation's First Amended Complaint. Doc. 12. For the reasons that follow, Park Assist's motion is **DENIED**.

## I.   BACKGROUND

Indect and Park Assist develop and sell technologies for camera-based intelligent parking systems, which manage the occupancy of parking spaces by detecting their occupancy status with cameras and sensors. Indect and Park Assist are direct competitors for such parking systems.

In 2016, the San Diego Airport requested bids for a camera-based parking guidance system in connection with the new construction of its Terminal 2 Parking Plaza. First Amended Complaint ("FAC") at ¶ 37. Park Assist submitted a bid proposing a parking guidance system that was the subject of its pending application for Patent No. 9,594,956

1

("the '956 Patent"). *Id.* The Airport did not accept Park Assist's bid, and instead, accepted a bid by Sentry Control Systems, which used Indect's UPSOLUT parking system. *Id.* at ¶ 38-40.

Approximately fourteen months after Park Assist's '956 Patent issued on March 14, 2017, the Airport Parking Plaza opened to the public with Ace Parking providing the Airport's parking management services. *Id.* at ¶ 41. On May 19, 2017, in response to communications from Park Assist to Indect and its customers, Indect released an industry statement about some of the reasons why its parking guidance systems do not infringe the '956 Patent. *Id.* at ¶¶ 42, 51-52, Ex. B. Indect disseminated its statement to existing and prospective customers at industry events and trade shows attended by Park Assist. *Id.*

On September 5, 2018, Park Assist brought suit in this Court against the San Diego Airport and Ace Parking for infringement of its '956 Patent based on their operation of a parking guidance system manufactured and sold by Indect ("the Airport lawsuit"). *Id.* at ¶ 1. Indect alleges that Park Assist's Airport lawsuit is objectively baseless because no reasonable litigant could expect success on the merits due to the Airport Parking System lacking at least ten attributes required for infringement of the '956 Patent. *Id.* at ¶ 2. Shortly after filing the Airport lawsuit, Park Assist began communicating with Indect's customers and potential customers about its lawsuit and threatening similar litigation against them if they did business with Indect. *Id.* at ¶¶ 4, 193, 196.

On October 19, 2018, Indect filed the instant lawsuit against Park Assist for declaratory and injunctive relief, as well as damages. Specifically, Indect seeks (1) a declaratory judgment that Indect does not infringe the '956 Patent, (2) a declaratory judgment that users of Indect's products do not infringe the '956 Patent, and (3) damages for unfair competition in violation of Section 43 of the Lanham Act.

## II. DISCUSSION

Park Assist moves to dismiss Indect's Complaint for lack of subject matter jurisdiction and failure to state a claim. First, Park Assist argues Indect's declaratory judgment claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and

12(h) because there is no actual controversy between Indect and Park Assist, and thus, no subject matter jurisdiction. Second, Park Assist contends Indect's unfair competition claim must be dismissed under Rule 12(b)(6) for failure to state a claim. The Court addresses each argument in turn.

**A. Declaratory Judgment for Non-Infringement (Counts 1 and 2)**

Park Assist moves to dismiss both declaratory judgment claims for lack of subject matter jurisdiction.

1. <u>Legal Standard</u>

An attack on subject matter jurisdiction may be either facial or factual. *Bal Seal Engineering v. Nelson Prods., Inc.*, 2016 WL 11518601, at *2 (C.D. Cal. Sept. 8, 2016) (citing *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016)). In a facial attack, the defendant asserts that the complaint's allegations are insufficient on their face to invoke federal jurisdiction. *Id.* In a factual attack, the defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the "court may look beyond the pleadings to the parties' evidence without converting the motion to dismiss into one for summary judgment." *Edison*, 822 F.3d at 517.

The Declaratory Judgment Act provides that "in a case of actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To establish the Court's subject matter jurisdiction, the party seeking a declaratory judgment bears the burden of showing the existence of an "actual controversy." *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1354-55 (Fed. Cir. 2013). An Article III case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech*, 549 U.S. 118, 127 (2007).

"In patent cases, declaratory judgment jurisdiction exists 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another

party, and where that party contends that it has the right to engage in the accused activity without license.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 489 F.3d 1372, 1381 (Fed. Cir. 2007)). Importantly, the Supreme Court's decision in "*MedImmune* rejected the [Federal Circuit's] prior, more stringent standard insofar as it included a requirement of a 'reasonable apprehension of imminent suit.'" *ABB Inc. v. Cooper Indus., LLC*, 645 F.3d 1345, 1348 (Fed. Cir. 2011). Thus, a specific threat of infringement litigation by the patentee is not required to establish jurisdiction." *Id.*

In challenging the Court's subject matter jurisdiction over Indect's declaratory judgment claims, Park Assist contends that no actual case or controversy exists between Park Assist and Indect. In so doing, Park Assist asserts both facial and factual challenges to Indect's allegations that Park Assist accused Indect, as well as Indect's existing and potential customers, of infringement.

2. Facial Attack

In support of its facial attack, Park Assist identifies paragraphs from Indect's FAC in which Indect alleges, without detail or supporting facts, that Park Assist accused it and its products of infringement, and threatened its customers. *See* Doc. 12-1 at 8-10. Park Assist characterizes these allegations as "bald, conclusory allegations" that are insufficient to establish jurisdiction because they do not include sufficient detail "identifying who made the alleged statements, when they were made or where they were published" and by not "attach[ing] . . . a single supporting document." *Id.*

Park Assist's challenge lacks merit. First, there is no requirement in the Federal Rules of Civil Procedure that a plaintiff attach to its complaint all of the documents supporting its allegations. Further, the conclusory cherry-picked paragraphs relied upon by Park Assist are not the only paragraphs Indect pleads in support of its declaratory judgment action. Indect's FAC includes at least some factual support for its contention that Park Assist accused it and its customers of infringement of the '956 Patent. For example, Indect pleads that it issued a statement to its existing and prospective customers

4

on May 19, 2017 "in response to Park Assist's false communications and advertising to those same customers about Indect's parking guidance systems purportedly infringing the '956 Patent." FAC at ¶ 51. Indect further asserts "[u]pon information and belief [that] SKIDATA decided to bid using Park Assist's products due to Park Assist's claims that Indect's products would infringe the '956 Patent and Park Assist's threats to sue anyone using Indect's products or any products other than Park Assist's for patent infringement," despite the fact that "Indect had proposed a price to SKIDATA that was much lower." *Id.* at ¶¶ 58-59. Indect additionally alleges that "[u]pon information and belief, Park Assist further advised Watry and Walker against doing business with Indect or else Park Assist would bring similar litigation against them and/or their clients for using Indect's products and Watry and Walker, in turn, advised their clients of Park Assist's threats."[1] *Id.* at ¶ 202.

On a facial attack, the "allegations are taken as true and construed in the light most favorable to the complainant." *American Fireglass v. Moderustic, Inc.* 2016 WL 3971396, at *4 (S.D. Cal. July 25, 2016). Thus, construing these allegations as true and in Indect's favor, Indect has alleged multiple instances in which Park Assist communicated and advertised to its existing or potential customers about Indect's parking system infringing the '956 Patent. Indect's FAC identifies at least three specific potential customers, SKIDATA, Watry, and Walker, that Park Assist allegedly threatened against using Indect's technology for infringing its patent. Indect further alleges that SKIDATA bid using Park Assist's products because of Park Assist's claims that Indect's products infringed the '956 Patent, despite Indect's bid being lower than Park Assist's. Accordingly, Indect has alleged "conduct that can be reasonably inferred as demonstrating intent to enforce a patent [that] can create declaratory judgment jurisdiction." *Hewlett-Packard*, 587 F.3d at 1363.

Park Assist does not cite any authority requiring the level of "who/what/where/when/how" specificity and evidentiary support that Park Assist contends

---

[1] According to the FAC, Watry and Walker are two of the parking industry's leading consulting firms. FAC at ¶ 201.

is required of a complaint about patent infringement. *Cf.* Fed. R. Civ. P. 9(b) (requiring a party to "state with particularity" the circumstances constituting fraud or mistake). Moreover, the authorities Park Assist relies upon to show the FAC is deficient are inapposite. *See, e.g., In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (in products liability class action, dismissing false advertising claim for failure to plead when and where any specific advertisement was shown); *West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297 (Fed. Cir. 1992) (dismissing complaint because plaintiff did not allege *a single communication* between the patent holder and plaintiff regarding the patents-in-suit and thus did not have a "reasonable apprehension of suit" sufficient to support declaratory judgment jurisdiction).

Although Park Assist also relies upon *SanDisk Corp. v. Audio MPEG, Inc.*, 2007 WL 30598 (N.D. Cal. Jan. 3, 2007), that case is distinguishable. In *SanDisk*, the plaintiff pointed to its allegations that the patent holder had filed lawsuits against it over the "European counterparts" to the nine patents for which it sought declaratory relief. *Id.* at *2. The court dismissed the suit for lack of subject matter jurisdiction, finding the plaintiff had not satisfied its burden of establishing an "objectively reasonable apprehension of suit" because the patent holder had not made *any* specific threat regarding the nine U.S. patents actually at issue in its suit. *Id.* at *5. Instead, the plaintiff's factual support was limited to threats and litigation related to the European patents. *Id.*

In sharp contrast to *SanDisk*, the patent holder here, Park Assist, has threatened Indect and its customers over infringement of Patent '956, the only patent at issue in this case. Because Indect has alleged the requisite "short and plain statement of the claim showing [it] is entitled to relief" in the form of allegations that Park Assist threatened it and its customers over infringement, Indect has adequately alleged a "substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. Accordingly, the Court rejects Park Assist's facial attack.

### 3. Factual Attack

The jurisdictional inquiry, however, does not end there. Park Assist additionally denies Indect's jurisdiction-supporting allegations by contending that it has not, in fact, accused Indect or others of infringement. Where, as here, the movant challenges the factual basis for the Court's subject matter jurisdiction, "the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (internal citations omitted). Thus, "[a]ll other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1584. "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* "Any factual disputes, however, must be resolved in favor of Plaintiffs." *Edison*, 822 F.3d at 517.

#### *a. Indect Properly Alleges that Park Assist Accused It of Infringement*

First, Park Assist challenges Indect's allegation that Park Assist accused it of infringing its patent. In support, Park Assist attaches a letter between it and Indect about the '956 Patent. Park Assist contends the letter to Indect merely gives Indect notice that the '956 patent issued and cannot be construed as giving rise to an actual case or controversy. "To assess whether a declaratory-judgment plaintiff had a reasonable apprehension of a patent- . . . infringement lawsuit, courts often consider the extent and nature of communications between the parties, including whether the patent . . . holder indicated that it might resort to litigation." *HSK, LLC v. United States Olympic Committee*, 248 F. Supp. 3d 938, 944 (Fed. Cir. 2017). "Typically, a patent . . . holder's direct statement of intent to enforce its intellectual property rights is indicative of an actual controversy." *Id.* Accordingly, the Court evaluates the May 17, 2017 "objectively and in totality" with the other facts of the case. *See Hewlett-Packard*, 587 F.3d at 1364.

The May 17, 2017 letter from Park Assist to Indect summarizes the technology covered by Park Assist's '956 Patent and asserts that Park Assist "diligently investigates potential violations of its intellectual property rights." Doc. 12-4. The letter continues:

> Park Assist is aware that INDECT . . . ha[s] been offering to sell and selling the INDECT UPSOLUT product. UPSOLUT appears to be a camera-based parking management systems [sic] incorporating technology similar to the innovative technology disclosed in, and protected by, Park Assist's '956 Patent and pending patent application.
> Accordingly, Park Assist hereby gives INDECT notice of the '956 Patent and requests that INDECT respect Park Assist's valuable intellectual property rights. As you may know, failure to do so will expose INDECT to infringement liability, treble damages for willfully infringing and an injunction against the sale of infringing products.

Doc. 12-4.

Park Assist contends its letter is merely "a notice and warning to Indect to avoid infringement," and thus, without more, cannot establish the existence of the requisite "definite and concrete" dispute for jurisdictional purposes. Doc. 24 at p. 3. As already discussed, declaratory judgment jurisdiction in a patent case exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *Hewlett-Packard*, 587 F.3d at 1361. According to Indect, the fact that Park Assist communicated directly with Indect about the '956 Patent, specifically identified the '956 Patent, specifically identified Indect's UPSOLUT product as a "similar" technology to the patent, requested that Indect "respect [its] valuable property rights," and then threatened that "failure to do so will expose Indect to infringement liability, treble damages for willfully infringing and an injunction against the sale of infringing products" is sufficient to show an "actual controversy" between Indect and Park Assist. The Court agrees.

"[A] specific threat of infringement litigation by the patentee is *not* required to establish jurisdiction, and a 'declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as litigation or infringement.'"

8

*ABB Inc. v. Cooper Industries, LLC*, 645 F.3d 1345, 1348 (Fed. Cir. 2011) (quoting *Hewlett-Packard*, 587 F.3d at 1362)) (emphasis added). Although Park Assist's letter does not expressly assert that Indect *is* infringing and does not demand a response, the other elements in the letter are sufficient to show that an actual controversy exists. This is so particularly in light of Park Assist's other communications with Indect's existing and potential customers in which Park Assist alleges Indect's products infringe its patent. Contrary to Park Assist's argument, Park Assist's strategic use of phrases like "may infringe," rather than expressly asserting that Indect's product is infringing, cannot defeat jurisdiction. Indeed, "it is implausible (especially after *MedImmune* and several post *MedImmune* decisions from [the Federal Circuit]) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and *explicitly allege infringement*." *Hewlett-Packard*, 587 F.3d at 1362 (emphasis added).

In a similar case, the Federal Circuit found declaratory judgment jurisdiction based on two letters from the patent owner, Acceleron, to the declaratory judgment plaintiff, Hewlett-Packard. *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009). In the letters, Acceleron identified itself as the owner of a particular patent, which it described as "relat[ing] to" Hewlett-Packard's "Blade Server products." *Id.* at 1362. Both letters requested that Hewlett-Packard "not file suit" and respond within two weeks, or Acceleron would understand that Hewlett-Packard "did not have anything to say about the merits of this patent, or its relevance to [Hewlett-Packard's] Blade Server products." *Id.* at 1362-63. Although Acceleron argued that a patent owner may contact another party to attempt to sell the patent or to suggest incorporating the patented technology into the other party's product, the Federal Circuit found "such an assertion . . . disingenuous" under the circumstances. *Id.* at 1363. The court explained, "[W]e doubt that in those situations, the patent owners would assert a patent as 'relevant' to the other party's specific product line, impose such a short deadline for a response, and insist the other party not file suit." *Id.* The court concluded that "[u]nder the totality of the circumstances, . . . it was not

9

unreasonable for HP to interpret Acceleron's letters as implicitly asserting its rights under the '021 patent." *Id.*

Park Assist contends no actual controversy exists because it never expressly accused Indect or its products of infringement, and a letter notifying another party about its patent issuing to encourage the party to avoid infringing is not the same as asserting its rights in the patent against the other party or its products. Here, however, the letter communicates more than a "notice" that "merely identif[ies] its patent and the other party's product line." *Id.* at 1362. As in *Hewlett-Packard*, Park Assist's "assertion appears disingenuous" in light of the circumstances. *Id.* at 1363. Much like the Federal Circuit was skeptical of Acceleron's letters being "offers," this Court, too, is skeptical that in a true "notice" situation, the patent owners would specifically identify by name the other party's technology and discuss that technology as "similar to the innovated technology disclosed in, and protected by" the owner's patent, as well as repeatedly request that the other party "respect" the patent or face "exposure . . . to infringement liability, treble damages," and more. Doc. 12-4.

Moreover, the fact that Park Assist did not demand a response is not fatal to this Court's jurisdiction. "The test for declaratory judgment jurisdiction in patent cases . . . is *objective*" and "it is the objective words and actions of the patentee that are controlling." *Hewlett-Packard*, 587 F.3d at 1363 (internal citations omitted). The facts of this case, when viewed objectively and in totality, show that Park Assist took the affirmative step of contacting Indect directly, making an implied assertion of infringement of its rights under the '956 patent against Indect's UPSOLUT products, and Indect disagreed by filing suit. Thus, Park Assist's factual attack fails. The Court is satisfied at this stage that there is declaratory judgment jurisdiction arising from a "definite and concrete" dispute between Park Assist and Indect, parties having adverse legal interests.[2]

---

[2] Of course, should evidence come to light showing the Court does, in fact, lack subject matter jurisdiction, Park Assist may reassert its challenge. *See, e.g., Folden v.*

10

*b. Indect Properly Alleges that Park Assist Accused Others of Infringement by Using Indect's System*

Next, Park Assist challenges Indect's allegation that Park Assist accused others of infringement by using Indect's products. Park Assist further contends that its Airport lawsuit, alone, cannot be the basis for jurisdiction. Because Park Assist attempts to deny or controvert Indect's allegations of jurisdiction, the Court again construes these arguments as a factual attack.

Although Park Assist attaches some extrinsic evidence to its motion, that evidence does not controvert all of Indect's allegations in support of its claim that Park Assist accused its potential or existing customers of infringement. *See* Doc. 12 (attachments). For example, as previously discussed, Indect's FAC alleges that Park Assist threatened three potential customers, Watry, Walker, and SKIDATA, against doing business with Indect, or Park Assist would bring litigation against them like its suit against the Airport. None of Park Assist's attached exhibits controvert those allegations, and thus, the burden does not shift to Indect to prove their truth with outside evidence.[3]

---

*United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*.").

[3] Although the Court need not consider it, the Court notes that one of Park Assist's exhibits appears to only further support the Court's finding of subject matter jurisdiction. Park Assist attaches its letter to the Hartsfield-Jackson Atlanta International Airport in which Park Assist identifies the '956 Patent, observes that the Airport is evaluating proposals for its parking guidance system, and that one or more of those proposals "may include the installation of an INDECT . . . parking guidance system." Doc. 12-6. The letter goes on to explain that it "previously advised INDECT . . . [of] Park Assist's '956 Patent and pending patent application" and that "Park Assist has taken efforts to protect its [system] and recently filed a patent action against two users of an INDECT parking guidance system." *Id.* That communication bolsters a finding of jurisdiction because it demonstrates that Park Assist has threatened potential customers against using Indect's product, specifically, and further suggests that Indect, itself, has infringed the '956 Patent. *See, e.g., Arris Group, Inc. v. British Telecomm'ns PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (finding jurisdiction where "the presentation made it clear that [a customer's] use of

11

Park Assist's reliance on *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014), does not require a different conclusion. In *Microsoft*, the Federal Circuit found the district court lacked declaratory judgment jurisdiction over Microsoft's suit on the '402 patent based on DataTern's lawsuits against Microsoft's customers. In sharp contrast to the present case, however, the patent holder in *Microsoft* (DataTern) specifically assured Microsoft that it did not intend to sue, and the court observed that the patent holder's litigation strategy "appear[ed] to involve suing software users, not software suppliers [like Microsoft]." *Id.* at 906-907. Here, however, Park Assist's own evidence demonstrates that it implicitly accused Indect of infringing Park Assist's patent, and there is no suggestion that Park Assist ever assured Indect that it did not intend to sue Indect, itself. Accordingly, accepting as true the uncontroverted factual allegations in Indect's FAC in conjunction with Park Assist's letter to Indect, the Court is satisfied that Indect has sufficiently pled an actual controversy for its second declaratory judgment count: that Park Assist has accused Indect's customers and potential customers of infringing Park Assist's '956 Patent.[4]

### B. Lanham Act Unfair Competition Claim (Count 3)

Finally, Park Assist argues that Indect's federal unfair competition claim must be dismissed under Rule 12(b)(6) for failure to state a claim because it does not sufficiently plead "bad faith." On a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). To avoid dismissal, the plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on

---

[the plaintiff's] [invention] was central to [the patent holder's] infringement contentions," including by specifically referencing the plaintiff by name and identifying the plaintiff's products by brand name and model number).

[4] Indect has carried its burden to establish jurisdiction without having to rely on the Airport lawsuit as the basis for jurisdiction. Accordingly, the Court need not reach Park Assist's additional argument that the Airport lawsuit does not confer a basis for jurisdiction.

12

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"To prevail on an unfair-competition claim under section 43(a) of the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith." *Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338 (Fed. Cir. 2008) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999)). That element "cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless, meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Id.* at 1338-39.

Here, Indect's FAC plausibly alleges the basis for a finding of bad faith sufficient to withstand a Rule 12(b)(6) motion. The FAC alleges that Indect's UPSOLUT product lacks at least ten attributes that are required to infringe the '956 Patent claims. FAC at ¶ 2. The FAC goes on to allege that Indect expressly disclosed some of those attributes through an industry statement it disseminated at industry events and trade shows attended by Park Assist, including by disseminating the statement to Indect's existing and prospective customers. *Id.* at ¶¶ 51-53. Indect attached the May 19, 2017 statement to its FAC, which specifically provides "some of the reasons why . . . [its] parking system does not infringe the '956 Patent" owned by Park Assist. *Id.* at Ex. B. Indect's FAC alleges that, despite Indect's industry statement and Indect's UPSOLUT system's clear lack of infringement, Park Assist filed suit against the Airport and Ace Parking for their use of Indect's allegedly infringing parking system technology. *Id.* at ¶ 53-60. Finally, Indect alleges that Park Assist publicly claimed to Indect's existing and potential customers that the Indect UPSOLUT system infringes the '956 Patent. *Id.*

Contrary to Park Assist's argument, Indect's pleadings adequately allege bad faith by pointing to a specific basis for its contention that Park Assist acted with a guilty mind. Specifically, Indect pleads (1) at least ten attributes not present in its UPSOLUT system

that are required to infringe Park Assist's Patent '956 and that would be obvious to Park Assist and (2) Indect's creation and distribution of an industry statement disclosing some of those specific reasons, a statement which Indect disseminated to current and prospective customers at industry trade shows attended by Park Assist. Thus, in sum, Indect has adequately alleged a plausible basis for asserting that Park Assist knew Indect's UPSOLUT system did not infringe its patent but still communicated its allegedly false claims to Indect's current and potential customers.

To be sure, discovery may reveal these allegations lack merit, but despite Park Assist's efforts to challenge their truth, that inquiry must remain for another day.[5] At the pleading stage, the plaintiff must merely allege "enough facts to state a claim to relief that is plausible on its face," such that the claim crosses "the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1274. Here, Indect has complied with that duty. *Cf. Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 162 (D. Mass. 2009) (dismissing unfair competition claim for failing to adequately allege bad faith because it only "broadly assert[ed]" the patent owner's knowledge of the patents' invalidity or knowledge that the products did not infringe without any specifics); *Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *8-9 (D.N.J. Aug. 18, 2009) (dismissing unfair competition claim for failing to adequately allege bad faith because it failed to provide any facts that the patent owners actually gained the alleged knowledge that its marketplace activity was objectively baseless or that discovery would reveal evidence of knowledge). Therefore, Park Assist's motion to dismiss the unfair competition claim is denied.

---

[5] Likewise, despite Park Assist's best efforts to challenge the merits of the infringement action, including by attacking the attributes Indect contends are missing from its technology, such challenges are not appropriate at the pleading stage. Park Assist may reassert such arguments and evidence on summary judgment.

14

3:18-cv-02409-BEN-MDD

## III. CONCLUSION

For the previous reasons, Park Assist's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Date: August 10, 2019

_____
HON. ROGER T. BENITEZ
United States District Judge