FILED

DEC 0 4 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PARK ASSIST, LLC,

             Plaintiff,

v.

SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY; and ACE
PARKING MANAGEMENT, INC.,

             Defendants.

_____

INDECT USA CORP.,

             Plaintiff,

v.

PARK ASSIST, LLC,

             Defendant.

Case No.:   3:18-cv-02068-BEN-DEB;
       and 3:18-cv-02409-BEN-DEB

**CLAIMS CONSTRUCTION ORDER**

## I.    INTRODUCTION

These related patent infringement matters come before the Court for claim construction.  On September 15, 2020, the Parties submitted Joint Hearing Statements, Claim Construction Charts, and Claim Construction Worksheets.  2068 ECF No. 92, 93,

1

1  94, 95; 2409 ECF No. 65, 66, 67, 71.[1]  On October 27, 2020, each Party submitted their

2  respective opening claim construction briefs.  2068 ECF No. 96, 97, 98; 2409 ECF No.

3  72, 73.  On November 10, 2020, the Parties also submitted responsive claim construction

4  briefs.  2068 ECF No. 100, 101, 102; 2409 ECF No. 75, 76.  On December 2, 2020, the

5  Court issued a Minute Order submitting the matters on the papers.  2068 ECF No. 103;

6  2409 ECF No. 79.

7  **II.    BACKGROUND**

8          Park Assist, LLC ("Park Assist") owns U.S. Patent Number 9,594,956 ("the '956

9  Patent") titled "Method and System for Managing a Parking Lot based on Intelligent

10  Imaging."  2068 ECF No. 1, 3.  Broadly, the '956 Patent teaches a parking guidance

11  system that allows the operator of a parking lot or garage to determine occupancy of

12  parking spaces in the lot or garage.  2068 ECF No. 98, 6; *see also* 2068 ECF No. 23-1, 1.

13  The '956 Patent improves upon prior art by providing a better system for managing a

14  parking lot based on intelligent imaging.  2068 ECF No. 51, 6-8.  The '956 Patent

15  contains one independent claim and one dependent claim.  *Id.* at 2.

16          Park Assist alleges the San Diego County Regional Airport Authority (the

17  "Airport") and Ace Parking Management ("Ace Parking") infringe on the '956 Patent by

18  using a competing parking guidance system made by Indect USA Corporation ("Indect").

19  2068 ECF No. 1, 4.  After Park Assist sued the Airport and Ace Parking, Indect sued

20  Park Assist seeking declaratory relief on non-infringement as well as damages for unfair

21  competition.  *See generally* 2409 ECF No. 1.

22  **III.   LEGAL STANDARD**

23          The construction of claims within a patent presents an issue of law for the Court.

24  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc),

25  aff'd, 517 U.S. 370 (1996).  "It is a bedrock principle of patent law that the claims of a

26

27

28

---

[1]       "2068 ECF No." shall refer to the docket in Case No. 3:18-cv-02068-BEN-DEB, while "2409 ECF No." shall refer to the docket in Case No. 3:18-cv-02409-BEN-DEB.

1  patent define the invention to which the patentee is entitled the right to exclude." *Phillips*
2  *v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and
3  citation omitted).  Construing the claims of a patent entails first analyzing intrinsic
4  evidence, and second, if needed, extrinsic evidence. *See, e.g., Personalized Media*
5  *Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) ("When construing
6  claim terms, we first look to, and primarily rely on, the intrinsic evidence, including the
7  claims themselves, the specification, and the prosecution history of the patent, which is
8  usually dispositive."); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583
9  (Fed. Cir. 1996) (noting that "[e]xtrinsic evidence may also be considered, *if needed* to
10  assist in determining the meaning or scope of technical terms in the claims.").  Intrinsic
11  evidence includes the patent claims, specification, and prosecution history. *Personalized*
12  *Media Commc'ns*, 952 F.3d at 1340.  Extrinsic evidence may include expert testimony,
13  product catalogs, journal articles, inventor testimony, dictionaries, and scientific treatises.
14  *Phillips*, 415 F.3d at 1317; *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212,
15  1221 (Fed. Cir. 2020).
16  　　　Claim terms "are generally given their ordinary and customary meaning" as
17  understood by a person having ordinary skill in the art at the time of the invention.
18  *Phillips*, 415 F.3d at 1312 (internal citations omitted).  "In some cases, the ordinary
19  meaning of claim language as understood by a person of skill in the art may be readily
20  apparent even to lay judges, and claim construction in such cases involves little more
21  than the application of the widely accepted meaning of commonly understood words."
22  *Id.* at 1314.  "However, in many cases, the meaning of a claim term as understood by
23  persons of skill in the art is not readily apparent." *O2 Micro Int'l Ltd. v. Beyond*
24  *Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  If the meaning of the
25  term is not readily apparent, the court must look to "those sources available to the public
26  that show what a person of skill in the art would have understood disputed claim
27  language to mean," including intrinsic and extrinsic evidence. *Phillips*, 415 F.3d at 1314.
28  　　　First, a court should look to the plain language of the claims. *See Vitronics*, 90 F.3d

1    at 1582.  A disputed term should be construed "consistently with its appearance in other

2    places in the same claim or in other claims of the same patent." *Rexnord Corp. v.*

3    *Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (internal citations omitted).

4    Accordingly, "'[a] claim construction that gives meaning to all the terms of the claim is

5    preferred over one that does not do so.'" *Vederi, LLC v. Google, Inc.*, 744 F.3d 1376,

6    1383 (Fed Cir. 2014) (quoting *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d

7    1364, 1372 (Fed. Cir. 2005)).

8         Second, a court must also read claims "in view of the specification, of which they

9    are a part." *Phillips*, 415 F.3d at 1315 (internal citation omitted).  "Apart from the claim

10   language itself, the specification is the single best guide to the meaning of a claim term."

11   *Vederi*, 744 F.3d at 1382 (internal citation omitted).  For example, "a claim construction

12   that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever,

13   correct and would require highly persuasive evidentiary support.'" *Adams Respiratory*

14   *Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (internal citation

15   omitted).  However, a claim construction must not import limitations from the

16   specification into the claims absent a clear indication in the intrinsic record that the

17   patentee intended the claims to be so limited.  *See Douglas Dynamics, LLC v. Buyers*

18   *Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013); *Dealertrack, Inc. v. Huber*, 674 F.3d

19   1315, 1327 (Fed. Cir. 2012).

20        Third, courts should consider the patent's prosecution history, which is the record

21   of proceedings before the Patent and Trademark Office ("PTO"), as it may indicate how

22   the inventor and PTO understood the patent.  *Phillips*, 415 F.3d at 1317.  The prosecution

23   history includes the prior art cited during the patent examination.  *Id.*  "Prior art" is

24   defined as "[k]nowledge that is publicly known, used by others, or available on the date

25   of invention to a person of ordinary skill in an art, including what would be obvious from

26   that knowledge."  Garner, Brian A., *Black's Law Dictionary*, ART (11th ed. 2019).

27   "Prior art includes (1) information in applications for previously patented inventions; (2)

28   information that was published more than one year before a patent application is filed;

4

1   and (3) information in other patent applications and inventor's certificates filed more than

2   a year before the application is filed." *Id.* However, "because the prosecution history

3   represents an ongoing negotiation between the PTO and the applicant, rather than the

4   final product of that negotiation, it often lacks the clarity of the specification and thus is

5   less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

6        If the intrinsic evidence resolves the ambiguity in the disputed claim terms, then,

7   "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583. If ambiguities

8   in the claim terms remain, however, courts may consider extrinsic evidence. *Id.* at 1584.

9   However, where after resort to extrinsic evidence, the claims of a patent lack the

10   definiteness to allow someone skilled in the relevant art at the time the patent was filed to

11   understand the scope of the patent, the patent will be held invalid due to indefiniteness.

12   *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "[A] patent must be

13   precise enough to afford clear notice of what is claimed thereby apprising the public of

14   what is still open to them." *Id.* at 909 (internal quotations omitted). However, "absolute

15   precision is unattainable," and the Court "must take into account the inherent limitations

16   of language." *Id.* at 910. Terms of degree do not render a claim indefinite so long as the

17   term "provide[s] enough certainty to one of skill in the art when read in the context of the

18   invention." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014).

19 **IV.**  **DISCUSSION**

20        In accordance with Local Patent Rule 4.2, the Parties identified several terms for

21   construction. *See* 2068 ECF No. 95; 2409 ECF No. 66. Both cases require construction

22   of the same eight terms of the '956 Patent. *See id.* Park Assist's proposed constructions

23   are the same in both cases pending before the Court. *Id.* Ace Parking joined the

24   Airport's briefs for claim construction, and both the Airport and Indect agree on

25   alternative proposed constructions of these eight terms. *Id.* For convenience, the Court

26   refers to the Airport, Ace Parking, and Indect as "Defendants" when discussing these

27   Parties collectively. When one Defendant offers different reasoning to support

28   Defendants' proposed construction, the Court refers to that Defendant by name.

The disputed terms are:

1.  "collocated"

2.  "high resolution image"

3.  "thumbnail image"

4.  "displaying a thumbnail image"

5.  "infringement process"

6.  "permit identifier"

7.  "(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;" and

8.  "(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status."

Based on the Parties' submissions and applicable law, the Court construes the submitted claim terms from the '956 Patent as set forth below.

## 1.   Collocated

The above language is found in claim 1, limitation (c).  Park Assist argues "collocated" should mean "together within the same unit or housing." 2068 ECF No. 95-1, 1. Defendants argue "collocated" should mean "placed together or close together." 2068 ECF No. 97, 24.

The term "collocated" is used within claim 1 to describe the location of the "multicolor indicator" with reference to the "imaging device" or camera described in the '956 Patent:

> (c) assigning said parking space, in which said occupancy was detected, an occupied status, wherein said occupied status is indicated by illuminating a first color of a multicolor indicator *collocated* with said imaging device, and first color predefined to determine said occupied status.

6

1   '956 Patent, Col. 22:37-42 (emphasis added). "Collocated" is not defined in the

2   specification.

3        Park Assist argues its proposed construction finds support in the specification

4   because several of the figures describe an "integrated camera, indicator, processor and

5   illumination module" or an indicator integrated with or within a camera or imaging

6   device. 2068 ECF No. 98, 11. It also cites to the prosecution history, asserting the

7   examiner understood the imaging device and indicator would be collocated by being

8   "included in the same unit." *Id.* at 12; *see also id.*, Ex. B, 4.

9        Indect argues Park Assist improperly seeks to narrow a broad claim based on the

10  specification when Park Assist has not made a clear disavowal of claim scope. 2068 ECF

11  No. 75, 4. Defendants further argue their proposed construction is consistent with the

12  plain language of the claim, and that the examples cited by Park Assist "indicate that the

13  patentee understood how to describe an indicator as 'within' or 'in the same unit' as a

14  camera, but intentionally chose not to use that definition when drafting its claims." 2068

15  ECF No. 97, 20.

16       The Court agrees with Defendants. "It is established that 'as a general rule claims

17  of a patent are not limited to the preferred embodiment . . . or to the examples listed

18  within the patent specification.'" *Glaxo Wellcome, Inc. v. Andrx Pharmaceuticals, Inc.*,

19  344 F.3d 1226, 1233 (Fed. Cir. 2003) (quoting *Dow Chemical Co. v. United States*, 226

20  F.3d 1281, 1293 (Fed. Cir. 2000)). Moreover, "[t]he patentee is free to choose a broad

21  term and expect to obtain the full scope of its plain and ordinary meaning unless the

22  patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony*

23  *Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

24       While these cases present the slightly unusual variation of a patentee advocating a

25  limitation on the claim, the Court is bound to apply these principles of claim construction.

26  Park Assist may have made its claim broader than its preferred embodiments, but it could

27  have used language that would have accomplished its sought limitation within the claim.

28  Defendants proposed construction is also consistent with the plain and ordinary meaning

1   of "collocated."

2       Accordingly, the Court construes "collocated" as *placed together or close together*.

3       **2.   High resolution image**

4       The term "high resolution image" is found in claim 1, limitations (d), (e), and (i).

5   '956 Patent, Col. 22:43-48, 22:63-68. Park Assist argues "high resolution image" should

6   mean "an image of high enough resolution to extract a permit identifier such as a license

7   plate number." 2068 ECF No. 98, 18. Alternatively, Park Assist proposes "an image of

8   sufficient resolution to extract a permit identifier such as a license plate number." 2068

9   ECF No. 102, 3. Defendants argue the term is indefinite and therefore cannot be

10  construed. 2068 ECF No. 97 at 9.

11      The term "high resolution image" is used within claim 1 as follows:

12          (d) obtaining, as a result of said parking space having said
13          occupied status, a single *high resolution image* of a vehicle
            occupying said parking space, said *high resolution image*
14          obtained by said imaging device;
            (e) storing at least part of said *high resolution image* on a storage
15          device; . . .
16          (i) extracting from said *high resolution image*, by digital image
            processing, a permit identifier for said vehicle and comparing
17          said permit identifier with at least one parking permit
18          identification stored on said storage to determine a permit status
            of said parked vehicle.
19

20  '956 Patent, Col. 22:43-48; 22:63-67. "High resolution image" is not defined in the

21  specification.

22      Park Assist argues the usage of the term in the claim itself provides the necessary

23  support for its proposed construction. 2068 ECF No. 98, 12. It argues that a "high

24  resolution image" is an image of such resolution that the "permit identifier," which could

25  include a license plate, can be read and extracted. *Id.* at 13. Park Assist further argues

26  the specification supports its proposed construction, consistently illustrating that when a

27  camera detects a vehicle, a system controller requests a "high resolution image" of the

28  vehicle and the system controller then extracts text from that "high resolution image." *Id.*

8

1 | (citing '956 Patent, Col. 1:48-55; 12:64-13:2; 19:54-56; 20:37-41; and 20:62-65).

2 |      Defendants argue "high resolution image" is indefinite "because it neither provides

3 | an objective limit to 'high' nor identifies which meaning of 'resolution' controls." 2409

4 | ECF No. 75, 2. In other words, Defendants assert, the '956 Patent fails to provide an

5 | objective standard for determining "how 'high' is 'high enough'" or which of the many

6 | potential definitions of "resolution" applies to the term here. *Id.*

7 |      Indefiniteness is a question of law for the Court. *Eli Lilly & Co. v. Teva*

8 | *Parenteral Medicines, Inc.*, 845 F.3d 1357, 1370 (Fed. Cir. 2017). It must be proven by

9 | clear and convincing evidence, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011),

10 | and must overcome a patent's presumption of validity. 35 U.S.C. § 282.

11 |      The claims of a patent must "particularly point[] out and distinctly claim[] the

12 | subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C.

13 | § 112(b). "[A] patent is invalid for indefiniteness if its claims, read in light of the

14 | specification delineating the patent, and the prosecution history, fail to inform, with

15 | reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus,*

16 | *Inc.*, 572 U.S. at 901. This requires the claim to be precise enough to afford "clear notice

17 | of what is claimed," which apprises the public of what is still open to them. *Id.* at 909.

18 | However, "absolute precision is unattainable," and the Court "must take into account the

19 | inherent limitations of language." *Id.* at 910. Terms of degree do not render a claim

20 | indefinite so long as the term "provide[s] enough certainty to one of skill in the art when

21 | read in the context of the invention." *Interval Licensing LLC*, 766 F.3d at 1370.

22 |      Applying these principles, the Court concludes that Park Assist's proposed

23 | alternative construction provides objective boundaries to define the term in the context of

24 | the invention. The specification discusses "high resolution image" in the context of

25 | reading and extracting a permit identifier, such as a license plate, and distinguishes

26 | between an "occupancy image" and an "identification image." '956 Patent, Col. 1:48-55.

27 | The specification further teaches how these images differ in purpose in the context of this

28 | particular invention. *Id.* at 20:62-65. That is all that is required for a term of degree to be

1    found definite. *See Interval Licensing*, 766 F.3d at 1370. Defendants attempt to make

2    the language here more complex than its plain and ordinary meaning in this context

3    demands. Nonetheless, avoiding the use of "higher" and replacing it with "sufficient" as

4    proposed in Park Assist's alternative construction will provide additional clarity to the

5    jury in deciding this matter. It is clear that "high resolution image" as used within the

6    '956 Patent means *an image of sufficient resolution to extract a permit identifier such as*

7    *a license plate number*. Accordingly, the Court adopts this proposed alternative

8    construction.

9        **3.    Thumbnail image**

10        The term "thumbnail image" is found in claim 1, limitations (f) and (g). '956

11   Patent, Col. 22:49-55. Park Assist argues "thumbnail image" should mean "a small

12   image of a picture on the computer screen." 2068 ECF No. 102, 15-16. Defendants

13   argue the term is indefinite. 2409 ECF No. 75, 2.

14        The term "thumbnail image" is used within claim 1 as follows:

> (f) displaying a *thumbnail image* of said parking space on a
> graphic user interface (GUI), said *thumbnail image* digitally
> processed from an image electronically communicated to said
> GUI from said imaging unit;
> (g) deciding whether said occupied status is incorrect, based on
> a visual review of said *thumbnail image* on said GUI;
> (h) correcting said occupied status, by inputting computer-
> readable instructions to a computer terminal of said GUI, if said
> parking space shown in said *thumbnail image* is vacant and said
> computer terminal electronically communicating a command to
> toggle said multicolor indicator to illuminate a second color, said
> second color predefined to indicate a vacant status.

23   956 Patent, Col. 22:49:55. "Thumbnail image" is not defined in the specification.

24        Like its arguments regarding "high resolution image," Park Assist contends the

25   specification and patent history provide support for its proposed construction. 2068 ECF

26   No. 98, 16-17. It also argues the Airport's expert agrees its proposed construction would

27   be understood by a person of ordinary skill in the art. *Id.* at 17. Park Assist succinctly

28   summarizes that "where an accused infringer is using a small image of a picture from the

1    imaging unit of claim 1 to review and determine occupancy, it is clear that they are

2    within the claim limitation." *Id.* at 18.

3        Defendants again argue that "thumbnail image" has no boundaries and thus could

4    be an image of any size. 2409 ECF No. 72, 14; ECF No. 97, 17. Accordingly,

5    Defendants contend, the term is indefinite and the '956 Patent is invalid. *See, e.g.,*

6    *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid

7    for indefiniteness if its claims, read in light of the specification delineating the patent, and

8    the prosecution history, fail to inform, with reasonable certainty, those skilled in the art

9    about the scope of the invention."). Defendants also cite to extrinsic expert evidence,

10   contending that these experts demonstrate that a person of ordinary skill in the art would

11   not be able to attach an appropriate meaning to the term. 2068 ECF No. 97, 17. Both

12   arguments miss the mark.

13       As with "high resolution image," the Court finds Park Assist's proposed

14   construction of "thumbnail image" has adequate support within the specification and

15   patent history. The use of "thumbnail image" here is distinguishable from the use of

16   "unobtrusive manner" analyzed by the Federal Circuit in *Interval Licensing.* 766 F.3d at

17   1371. There, the court found "sufficient guidance [was] lacking in the written description

18   of the asserted patents." *Id.* Here, by contrast, the specification teaches how a

19   "thumbnail image" is used on a graphic user interface ("GUI"), which would commonly

20   be a computer screen, to allow a parking lot manager to interface with the system and

21   monitor parking. '956 Patent. Fig. 7 and 8; Col. 16:9-16. The "thumbnail images" in

22   those figures are "small images of pictures" on a "computer screen." Though they may

23   vary somewhat in size, a "thumbnail image" in the context of the '956 Patent is bounded

24   by the GUI on which it is displayed. Even extrinsic expert evidence supports Park

25   Assist's proposed construction. The Airport's expert testified that he knew the term

26   "thumbnail image" to mean an image that is a placeholder for another image, usually

27   with a lower memory requirement. *See* 2068 ECF No. 98-11, Havelick Tr. at 81:11-15.

28       Accordingly, the Court construes "thumbnail image" as *a small image of a picture*

1  *on the computer screen.*

2      **4.**    <u>**Displaying a thumbnail image**</u>

3      The phrase "displaying a thumbnail image" is found in claim 1, limitation (f). '956

4  Patent, Col. 22:49-52. Park Assist argues "displaying a thumbnail image" should mean

5  "displaying a small image of a picture of a parking space on a computer screen." 2068

6  ECF No. 98, 19. Defendants argue the term should mean "displaying a real-time

7  thumbnail image of said parking space." ECF No. 95-1,

8      The term "displaying a thumbnail image" is used within claim 1 as follows:

9          (f)   *displaying a thumbnail image* of said   parking space on   a

10          graphic user interface (GUI), said thumbnail image digitally
processed from an image electronically communicated to said

11          GUI from said imaging unit;

12          (g) deciding whether said occupied status is incorrect, based on
a visual review of said thumbnail image on said GUI;

13          (h) correcting said occupied status, by inputting computer-

14          readable instructions to a computer terminal of said GUI, if said
parking space shown in said thumbnail image is vacant and said

15          computer terminal electronically communicating a command to
toggle said multicolor indicator to illuminate a second color, said

16          second color predefined to indicate a vacant status.

17  '956 Patent, Col. 22:49-62. The specification does not define the term, but the Court's

18  construction of "thumbnail image" above informs the construction of the term here.

19      Park Assist argues Defendants' proposed construction adds a "real-time" limitation

20  that is not in the claim. ECF No. 98, 19. Instead, Park Assist argues, the '956 Patent

21  "plainly teaches that thumbnail images are not real-time and may be [ten] minutes old."

22  *Id.* (citing '956 Patent, Col. 15:62-16:8).

23      Defendants argue that reading limitation (f) of the claim alone, without reading

24  limitations (g) and (h), would render limitation (f) meaningless to a person of ordinary

25  skill in the art. ECF No. 72, 19; ECF No. 97, 21. Defendants further argue the '956

26  Patent was intended to provide real-time feedback to improve parking guidance system

27  accuracy, which is a problem identified with prior art systems by the '956 Patent. ECF

28  No. 97, 21. Adopting a construction that allows for a ten-minute delay, Defendants

1   reason, would not be an improvement on prior art.

2       Here, Defendants propose a construction that will better assist the jury.

3   Fundamentally, Park Assist's construction and reliance on the ten minutes threshold

4   found in one embodiment misrepresents the invention's purpose.  This embodiment

5   teaches that the thumbnail image on the GUI should be no more than ten minutes old

6   before the system controller requests a new image of the parking space from the

7   associated camera unit.  '956 Patent, Col. 15:62-16:8.  However, this embodiment also

8   teaches that the thumbnail is updated every time a vehicle enters or exits a parking space.

9   *Id* at 16:1-2.  Thus, the intent of the invention is in part to "provide real-time feedback,"

10  and the ten-minute threshold is merely a failsafe provision designed as a back-up to an

11  undetected entry or exit.  *See also* '956 Patent, Col. 14:58-61 ("Enforcement. The system

12  can track in real time whether a particular parking space is correctly occupied, for every

13  parking space, 24 hours a day").  A person of ordinary skill in the art would determine

14  this from reading the specification, particularly from reading how intervention can correct

15  – in real-time or at least near real-time – an erroneous indicator that marks a space as

16  vacant when it is occupied or vice versa, using the display of a thumbnail image.

17      Accordingly, the Court construes "displaying a thumbnail image" as *displaying a*

18  *small near real-time image of a picture of said parking space on the computer screen.*

19  **5.   Infringement Process**

20      The above language is found in claim 1, limitation (j).  '956 Patent, Col. 23:1-4.

21  Park Assist argues "infringement process" should mean "providing a notification of

22  unauthorized parking." 2068 ECF No. 98, 20-21. Defendants argue "infringement

23  process" should mean "providing a notification to staff that they have parked outside a

24  designated staff parking area." 2068 ECF No. 97, 22.

25      The term "infringement process" is used in claim 1 as follows:

26          (i) extracting from said high resolution image, by digital image
27          processing, a permit identifier for said vehicle and comparing
            said permit identifier with at least one parking permit
28          identification stored on said storage to determine a permit status

1
2
3

> of said parked vehicle; and
> (j) initiating an *infringement process* for said vehicle having said
> permit identifier that fails to coincide with at least one of said at
> least one parking permit identification.

4  '956 Patent, Col. 22:63-23:4.  The specification does not define "infringement process,"

5  and the Parties agree this term does not have a plain and ordinary meaning.  2068 ECF

6  No. 97, 23.

7       Park Assist argues its proposed construction is supported by the specification's

8  description of the "Permit Parking Control" and "Enforcement" features.  2068 ECF No.

9  98, 21-22.  Park Assist also argues extensively that Defendants' proposed construction

10  impermissibly limits the infringement processing to staff parking areas only.  *Id.* at 22.

11  Defendants respond that the only place the '956 Patent teaches "infringement process" is

12  where the additional "Permit Parking Control" feature is described.  2068 ECF No. 97,

13  22-23.  "Permit Parking Control," Defendants allege, is limited to staff parking areas and

14  not the "Tiered Parking Control" feature described elsewhere in the specification that

15  enables variable cost to be imposed for different parking spaces.  *Id.* at 23.  Thus, the

16  construction of "infringement process" should be limited to staff parking areas because

17  that limitation is "consistent with the patent's only disclosure of an 'infringement

18  process' to the public."  *Id.*

19       While the Court agrees that the "Permit Parking Control" feature description

20  contained in the specification is confusing, a broader view of the specification clearly

21  contemplates an "infringement process" that occurs in areas outside a "designated staff

22  parking area."  For example, the "Enforcement" feature described in the specification

23  discusses how a vehicle parked in one space for too long or a vehicle parked in more than

24  one space can be detected and acted upon.  '956 Patent, Col. 14:59-67.  In addition, the

25  prosecution history describes how an "infringement process" is initiated whenever there

26  is a mismatch between a permit identifier, discussed below, and a particular parking area

27  in the lot or garage.  2068 ECF No. 98, Ex. 1, 20.  These explanations in the specification

28  illuminate what is meant by "infringement process" and guide the Court to the proper

construction. *See Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction") (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1248, 1250 (Fed. Cir. 1998)).

Accordingly, the Court construes "infringement process" as *a notice of unauthorized parking.*

### 6.   <u>Permit identifier</u>

The Parties' agree that "permit identifier" means "an attribute that can be used to identify the permit status of a parked vehicle including a permit badge, license plate number or unique combination of vehicle make, model, color and other identifying marks." 2068 ECF No. 95-1, 14. Having considered the Parties' agreed construction, the Court believes the proposed construction would aid the jury in its findings of fact on infringement. Accordingly, the Court construes "permit identifier" as *an attribute that can be used to identify the permit status of a parked vehicle including a permit badge, license plate number or unique combination of vehicle make, model, color and other identifying marks.*

### 7.   <u>(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI</u>

The above language is the entirety of claim 1, limitation (g). '956 Patent, Col. 22:53-55. Park Assist argues the phrase needs no construction and should be given its plain and ordinary meaning. 2068 ECF No. 98, 23. Defendants' proposed construction is "(g) deciding, by a human operator, whether said occupied status is incorrect, based on a review of said thumbnail on said GUI." 2068 ECF No. 95-1, 16. This proposed construction adds "by a human operator" and removes "visual" from the claim. The phrase appears in its entirety within claim 1, and no further context is required.

Defendants argue a person of ordinary skill in the art would understand limitation (g) to require a human operator to decide whether the "occupied" status of a parking space displayed on the thumbnail image is correct. 2068 ECF No. 97, 23-24. Defendants

1   further argue the word "visual" means "sensing by a human," and therefore their

2   proposed construction adds clarity by directly mentioning "human intervention" as

3   opposed to leaving the human aspect of the limitation implied by the use of "visual." *Id.*

4   Defendants support this argument by citing to the Court's ruling on the Airport and Ace's

5   motion to dismiss Park Assist's claims.  2068 ECF No. 97, 24; 2409 ECF No. 72, 21.

6      First, Defendants misread the Court's Order.  The portion of the Order cited by

7   Defendants provides examples of technological improvements in the '956 Patent and

8   cannot be read to import limitations into the '956 Patent's claims here. *See* 2068 ECF

9   No. 51, 7.  Second, the Federal Circuit has cautioned that the Court must "avoid the

10  danger of reading limitations from the specification into the claim." *Phillips*, 415 F.3d at

11  1323.  "[T]he claims of a patent will not be read restrictively unless the patentee has

12  demonstrated a clear intention to limit the claim scope using 'words or expressions of

13  manifest exclusion or restriction.'" *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797

14  (Fed. Cir. 2019) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327

15  (Fed. Cir. 2002)).  When construing "collocated," above, the Court noted that Park Assist

16  made its claim broader than its preferred embodiments, though it could have used

17  language that would have accomplished its sought limitation.  The same principle applies

18  the other way here.  Park Assist could have added the "by a human operator" limitation to

19  the claim but did not, and the Court finds it inappropriate to add that limitation now.

20     Accordingly, the Court declines to construe "(g) deciding whether said occupied

21  status is incorrect, based on a visual review of said thumbnail image on said GUI."  The

22  plain and ordinary meaning of the phrase applies.

8.   **(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multi-color indicator to illuminate a second color, said second color predefined to indicate a vacant status**

27  The above language is the entirety of claim 1, limitation (h).  '956 Patent, Col.

28  22:56-62.  Park Assist argues the phrase needs no construction and should be given its

16

plain and ordinary meaning. 2068 ECF No. 98, 24. Defendants' proposed construction is
"(h) correcting said occupied status, by the human operator inputting computer-readable
instructions to a computer terminal of said GUI, if said parking space shown in said
thumbnail image is vacant and said computer terminal electronically communicating a
command to switch said first color of said multi-color indicator to illuminate a second
color, said second color predefined to indicate a vacant status." 2068 ECF No. 95-1, 18.
This proposed construction again adds "by the human operator" and changes the word
"toggle" to "switch." The phrase appears in its entirety within claim 1, and no additional
context is required.

Park Assist argues Defendants again impermissibly limit the claim by adding a
"human operator" requirement. 2068 ECF No. 98, 24. Park Assist also argues that the
change from "toggle" to "switch" has no support in the specification, and that reliance on
a dictionary definition here would confuse rather than clarify. *Id.* Defendants respond by
re-arguing their points about a "human operator" requirement discussed in the previous
section. 2068 ECF No. 97, 25; 2409 ECF No. 72, 23. Defendants further argue that
changing from "toggle" to "switch" will assist the jury in making sense of the claim. *Id.*

The Court rejects Defendants' arguments about a "human operator" requirement
for the reasons set forth in the previous section. With respect to "toggle" or "switch," the
Court finds that the change would not meaningfully assist the jury. Moreover, the '956
Patent uses the term "switch" in the specification in relation to ethernet communications,
which could induce more confusion than the change would relieve. *See, e.g.*, '956 Patent,
Col. 8:39, 8:55, and 9:1.

Accordingly, the Court declines to construe "(h) correcting said occupied status, by
inputting computer-readable instructions to a computer terminal of said GUI, if said
parking space shown in said thumbnail image is vacant and said computer terminal
electronically communicating a command to toggle said multi-color indicator to
illuminate a second color, said second color predefined to indicate a vacant status." The
Court finds that the plain meaning should control because a person having ordinary skill

1    in the art would understand the meaning of these terms.  Therefore, no construction is

2    necessary.

3        **IT IS SO ORDERED.**

4

5    Date: December 17, 2020

6                              HON. ROGER T. BENITEZ

7                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28