UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDECT USA CORP., a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>PARK ASSIST, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:  3:18-cv-02409-BEN-DEB<br><br>**ORDER ON:**<br><br>**(1) MOTIONS FOR SUMMARY JUDGMENT;**<br>**(2) MOTION TO DISMISS; and**<br>**(3) REQUESTS FOR JUDICIAL NOTICE**<br><br>**[ECF Nos. 145, 148, 149, and 157]** |
| PARK ASSIST, LLC, a Delaware limited liability company,<br><br>Counterclaimant,<br><br>v.<br><br>INDECT USA CORP., a Texas corporation,<br><br>Counterdefendant. | |

This case arises out of a lawsuit filed by Plaintiff Indect USA Corp. ("Indect") seeking a declaratory judgment that neither Indect nor the users of its products infringed on claims of U.S. Patent Number 9,594,956 ("the '956 Patent") owned by Defendant Park Assist, LLC ("Park Assist").  Second Amended Complaint ("SAC"), ECF No. 58, ¶ 6.  The matter comes before the Court on (1) Indect and Park Assist's Cross-Motions for

Partial Summary Judgment, (2) Park Assist's Motion to Dismiss, and (3) Indect's Requests for Judicial Notice.  ECF Nos. 145, 148, 149, and 157.  The motions were submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 190.

Based on the parties' briefs, evidence submitted, and applicable law, the Court: (1) **DENIES** both parties' Motions for Partial Summary Judgment as to Indect's First Claim for Relief; (2) **DENIES** both parties' Motions for Partial Summary Judgment on Indect's Second Claim for Relief; (3) **GRANTS** Indect's Motion for Summary Judgment as to its Third Claim for Relief (and also **DENIES** Park Assist's Motion to Dismiss that claim); (4) **DENIES** Park Assist's Motion for Summary Judgment on Indect's Fourth Claim for Relief; (5) **GRANTS** Indect's Motion for Summary Judgment on Park Assist's First Counterclaim; (6) **DENIES** Indect's Motion for Summary Judgment on Park Assist's Second Counterclaim; (7) **GRANTS** Indect's Motion for Summary Judgment on Park Assist's Third Counterclaim; and (8) **GRANTS** Indect's Requests for Judicial Notice.

# I.    BACKGROUND

Indect and Park Assist are direct competitors that develop and sell technologies for camera-based parking guidance systems.  Park Assist's Mot., ECF No. 142, 10; Indect's Mot., ECF No. 147, 12.  These systems manage the occupancy of parking spaces within a parking lot or parking garage by detecting a parking space's occupancy status with cameras and sensors.  Indect Mot., ECF No. 147, 12.  Park Assist owns the '956 Patent, which is the subject of this lawsuit.

Park Assist was also involved in a related lawsuit pending before this Court.  *See Park Assist, LLC v. San Diego Cty. Reg'l Airport Auth., et al.*, Case No. 18-cv-2409-BEN-DEB (the "Airport Case").  In the Airport Case, Park Assist sued the San Diego County Regional Airport Authority and Ace Parking Management, Inc. for infringing the '956 Patent by using Indect's UPSOLUT parking guidance system at the Terminal 2 parking garage of the San Diego International Airport.  On March 31, 2021, the Airport Case settled and has since been dismissed by stipulation of the parties.  *See* Airport Case,

ECF No. 146.  Before settling, however, the defendants in the Airport Case filed a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Airport Case, ECF No. 42.  The Court denied that motion for sanctions.  Airport Case, ECF No. 69.  Nonetheless, that litigation forms part of the basis for one of Indect's claims in this case.  *See* SAC, ECF No. 58, ¶¶ 225-31.

Shortly after Park Assist filed the Airport Case on September 5, 2018, Indect filed this lawsuit against Park Assist, alleging four claims for relief: (1) declaratory relief that UPSOLUT does not infringe the '956 Patent; (2) declaratory relief the '956 Patent is invalid; (3) declaratory relief that Indect's customers do not infringe the '956 Patent; and (4) damages and an injunction for Park Assist's alleged unfair competition in violation of 15 U.S.C. § 1125(a) (the "Lanham Act").  *See* SAC, ECF No. 58, ¶¶ 210-32.  In response, Park Assist filed an answer and countercomplaint, alleging three counterclaims for (1) induced infringement of the '956 Patent; (2) a declaratory judgment of direct infringement by Indect of the '956 Patent; and (3) a declaratory judgment of induced infringement by Indect of the '956 Patent.  Answer, ECF No. 68, ¶¶ 40-58.

The '956 Patent is relatively straightforward and contains only two claims.  Claim 1 is at issue here.  In its entirely, claim 1 states:

> What is claimed is:
> 1. A method of managing a plurality of parking spaces, comprising:
>    (a) monitoring a parking space with an imaging device of an imaging unit;
>    (b) detecting, by said imaging unit, occupancy of said parking space;
>    (c) assigning said parking space, in which said occupancy was detected, an occupied status, wherein said occupied status is indicated by illuminating a first color of a multicolor indicator collocated with said imaging device, said first color predefined to determine said occupied status;
>    (d) obtaining, as a result of said parking space having said occupied status, a single high resolution image of a vehicle occupying said parking space, said high resolution image obtained by said imaging device;
>    (e) storing at least part of said high resolution image on a storage device;

(f) displaying a thumbnail image of said parking space on a graphic user interface (GUI), said thumbnail image digitally processed from an image electronically communicated to said GUI from said imaging unit;

(g) deciding whether said occupied status is incorrect, based on a visual review of said thumbnail image on said GUI;

(h) correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, if said parking space shown in said thumbnail image is vacant and said computer terminal electronically communicating a command to toggle said multicolor indicator to illuminate a second color, said second color predefined to indicate a vacant status;

(i) extracting from said high resolution image, by digital image processing, a permit identifier for said vehicle and comparing said permit identifier with at least one parking permit identification stored on said storage to determine a permit status of said parked vehicle; and

(j) initiating an infringement process for said vehicle having said permit identifier that fails to coincide with at least one of said at least one parking permit identification.

*See* '956 Patent, Col. 22:30-23:4. At the parties' request, the Court construed several terms of the '956 Patent. *See* Claims Construction Order, ECF No. 80.

On June 21, 2021, both parties filed their respective Motions for Partial Summary Judgment. ECF Nos. 145, 149. The Final Pretrial Conference is scheduled for October 4, 2021. ECF No. 152.

## II.   LEGAL STANDARDS

### A.   Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The party

seeking to defeat summary judgment must come forward with affirmative evidence from which a reasonable jury could render a verdict in that party's favor. *Id.* at 252. However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Phytelligence, Inc. v. Washington State Univ.*, 973 F.3d 1354, 1364 (Fed. Cir. 2020) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (quoting *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)). Additionally, while the Court will draw all reasonable inferences in the non-moving party's favor and believe the evidence of the non-moving party, the Court will not draw unreasonable inferences and cannot believe evidence that does not exist. *Cf. Anderson*, 477 U.S. at 255.

When ruling on such a motion for summary judgment, courts apply federal circuit law to issues unique to patent law, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010), and regional circuit law to substantive issues that are not unique to patent law or procedural issues. *See, e.g.*, *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952–53 (Fed. Cir. 1990) ("When this court considers questions on appeal involving substantive matters not exclusively assigned to the Federal Circuit, our general practice is to apply to related procedural issues the appropriate regional circuit law.").

On motions for summary judgment involving patent infringement, the party claiming patent infringement must prove infringement "by a preponderance of the evidence, which simply requires proving that infringement was more likely than not to have occurred." *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1341, n.15 (Fed. Cir. 2005) (internal citations omitted). Because the ultimate issue of infringement is a question of fact, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019), infringement issues that require courts to draw inferences from the known facts are not well-suited to summary judgment because all such inferences must be drawn against the moving party, *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Motion to Dismiss for Lack of Standing

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, district courts are presumed to lack jurisdiction unless the Constitution or a statute expressly provides otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *see also* 28 U.S.C. § 1447 (requiring district courts to remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction").

Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to justiciable "cases" and "controversies." U.S. Const., Art. III, § 2. The Supreme Court has held that for a case to meet the justiciability requirement, a plaintiff must show (1) standing; (2) that the case is ripe; (3) the case is not moot; and (4) the case does not involve a political question. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). Consequently, a "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted).

## III.    DISCUSSION

As laid out above, the Court makes rulings on each of the four Claims for Relief and three Counterclaims at issue in this case. However, the Court finds it most straightforward to address these claims out of order by first considering the validity of the '956 Patent; then, turning to the parties' direct and induced infringement claims; before finally concluding with Indect's unfair competition claim. Rest assured, the Court summarizes its findings with respect to each Claim for Relief and Counterclaim at the conclusion of this Order.

### A.    Validity of the '956 Patent

Indect makes several challenges to the validity of the '956 Patent that form the

basis for its Second Claim for Relief in the SAC.

"Under 35 U.S.C. § 282, a patent is presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence." *Atlas Powder Co. v. E.I. duPont deNemours & Co.*, 750 F.2d 1569, 1573 (Fed. Cir. 1984). "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). In this case, the Court finds that Indect has failed to present clear and convincing evidence showing why the '956 Patent is invalid.

### 1.     The '956 Patent is not indefinite

Indect first argues the Court should grant summary judgment on its Second Claim for Relief because step (h) of the '956 Patent is invalid due to indefiniteness. Indect Mot., ECF No. 147, 26. Specifically, Indect contends that the '956 Patent, as written, is impossible to perform, and therefore is indefinite for lack of enablement. *Id*. Park Assist responds that step (h) of the '956 Patent is conditional, and therefore claim 1 of the '956 Patent is enabled by the specification and not indefinite. Park Assist Opp'n, ECF No. 159, 24-25.

Section 112 of the Patent Act provides that the "specification shall contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms *as to enable any person skilled in the art to which it pertains* . . . to make and use the same." 35 U.S.C. § 112(a) (emphasis added). "Whether a claim satisfies § 112's enablement requirement is a question of law." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1361 (Fed. Cir. 2018). "[T]o be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (alteration in original) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). Thus, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the

patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  "[W]hen an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claimed invention must be held invalid." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1359 (Fed. Cir. 1999).

Indect argues the '956 Patent must be read to include both the image of a vacant parking space and extraction of a high-resolution image of a license plate.  Indect Mot., ECF No. 147, 26-27.  Indect contends that this is nonsensical, because only an image of a vehicle could contain a license plate from which a high-resolution image could be extracted, and an empty parking space cannot contain an image of a vehicle.  *See id*.  Park Assist responds that the step of the '956 Patent at issue here is conditional, and therefore the step "need not ever be met for the claim to be practiced."  Park Assist Opp'n, ECF No. 159, 25.

Step (h) of the '956 Patent describes how part of the claimed patent includes a method for correcting a space's occupied status once it becomes vacant:

> correcting said occupied status, by inputting computer-readable instructions to a computer terminal of said GUI, *if said parking space shown in said thumbnail image is vacant* and said computer terminal electronically communicating a command to toggle said multicolor indicator to illuminate a second color, said second color predefined to indicate a vacant status

'956 Patent, Col. 22:56-62 (emphasis added).  While the Court agrees the contingent clause of step (h) could have been more clearly written at the beginning of step (h) to avoid this confusion, it is also mindful that courts "strive, wherever possible, to avoid nonsensical results in construing claim language." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) (citing *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008)).  Here, reading step (h) as applying only in cases where the parking space in the thumbnail image is vacant thwarts Indect's challenge.

Accordingly, the Court finds the '956 Patent, including but not limited to Step (h) of Claim 1, is not invalid for indefiniteness.

### 2.    The '956 Patent is not directed at an abstract idea

While the Court concludes the '956 Patent is not invalidated on indefiniteness grounds, Indect also argues the '956 Patent is invalid because it is impermissibly "directed to the law of nature, natural phenomenon, or abstract idea."  Indect Mot., ECF No. 147, 28 (citing 35 U.S.C. § 101).  Park assist opposes this contention by pointing out that the Court has addressed this argument before in relation to the '956 Patent in the Airport Case.  Opp'n, ECF No. 159, 26-27 (citing *Park Assist, LLC v. San Diego Cty. Reg'l Airport Auth.*, 402 F. Supp. 3d 956, 959 (S.D. Cal. 2019)).

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process . . . or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The term "process" "includes a new use of a known process, machine, manufacture, composition of matter, or material."  35 U.S.C. § 100(b).  Patent protection, however, does not extend to patent ineligible concepts of laws of nature, natural phenomena, and abstract ideas, which are "building blocks of human ingenuity."  *Alice Corp. Party Ltd. v. CLS Bank, Int'l*, 573 U.S. 208, 217 (2014).  Accordingly, the Court must "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention."  *Id.* at 217 (internal quotation marks and citations omitted).  To do so, the Supreme Court has outlined a two-step process.  *See id*.  First, the Court determines whether the claims at issue are "directed to" a patent ineligible concept.  *Id.* If so, the Court next determines whether additional elements of the claim, both individually and as an ordered combination, produce an "inventive concept" by "transform[ing] the nature of the claim into patent-eligible application."  *Id.*  If, however, the Court finds during the first step that the claims are directed to a patent-eligible concept, the claims satisfy Section 101, and the Court need not proceed to the second

step. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017).

This Court previously held that "the '956 Patent's claims are not abstract because they are directed to specific improvements to known parking guidance systems." *Park Assist*, 402 F. Supp. 3d at 960.  Nonetheless, Indect argues that the Federal Circuit's recent decision in *Yu v. Apple, Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), requires a different outcome here.  Indect Mot., ECF No. 148, 28.  Specifically, Indect contends that the '956 Patent "is directed to an abstract idea of processing and displaying information because it implements the abstract idea on existing generic components and algorithms." *Id*. at 29.

In *Yu*, the Federal Circuit affirmed the district court's decision invalidating an improved digital camera patent because the patent's claims recited "[o]nly conventional components" performing "only their basic functions."  1 F.4th at 1043.  The court found the claim to be "simply a generic environment in which to carry out the abstract idea." *Id*.  By contrast, and as this Court discussed when it previously addressed this issue, the '956 Patent's claims "are directed to 'a specific means or method' for improving parking guidance system technology, rather than simply directed to an abstract end-result." *Park Assist*, 402 F. Supp. 3d at 963 (citations omitted).  The '956 Patent includes "a novel [graphic user interface], a self-modifying classification algorithm that allows the parking system to adapt and learn from past errors to improve detection accuracy, and a collocated imaging/indicator structure." *Id*.  Each of these improvements distinguishes the '956 Patent from the *Yu* patent.  Moreover, *Yu* neither changes the *Alice* framework nor requires a different result here.  The '956 Patent is not directed at a patent-ineligible concept, and the Court's analysis of Indect's abstractness argument concludes here. *See Visual Memory*, 867 F.3d at 1262.

Accordingly, the Court finds the '956 Patent is not invalid on grounds it is directed at an abstract idea.

### 3.   *A triable issue remains as to obviousness over prior art*

While the Court concludes the '956 is not invalidated on indefiniteness or abstractness grounds, Indect also argues the '956 Patent is invalid as obvious over prior

art.  Indect Opp'n, ECF No. 165, 16-20.  Park Assist asks the Court to grant summary judgment that the '956 Patent is not invalid based on obviousness over prior art.  Park Assist Mot., ECF No. 142, 20.

Here, the application for the '956 Patent has an effective filing date of May 8, 2011.  *See* '956 Patent.  Because that date is before March 13, 2013, the applicable version of 35 U.S.C. § 102 ("Section 102") is the version predating the America Invents Act ("AIA").  *In re Marquez*, 738 F. App'x 1012, 1013 n.1 (Fed. Cir. 2018).

At the time, Section 102 provided that "[a] person shall be entitled to a patent unless — (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102 (pre-AIA).

This "prior art" is defined as "[k]nowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge."  Garner, Brian A., *Black's Law Dictionary*, ART (11th ed. 2019).  Prior art includes information (1) "in applications for previously patented inventions"; (2) "published more than one year before a patent application is filed"; and (3) "in other patent applications and inventor's certificates filed more than a year before the application is filed."  *Id.*

When applied to a method patent, "there is no reason or statutory basis . . . on which . . . secret commercialization of a process, if established, could be held a bar to the grant of a patent . . . on that process."  *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983).  Thus, regardless of whether a *product* is sold before the critical date, the question is whether "the public could learn the claimed process by examining the [product]."  *Id.*  "Whether an invention was on sale within the meaning of § 102(b) is a question of law."  *Electromotive Div. of Gen. Motors Corp. v. Trans. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005).  The party asserting obviousness has the burden of proving a patent is obvious over prior art by clear and convincing evidence.  *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996).

11

1      Indect argues the '956 Patent is invalid because Park Assist's own M3 Parking

2  System is prior art of the '956 Patent.  Indect Opp'n, ECF No. 165, 14.  Applying the

3  '956 Patent's effective filing date to Section § 102(b), the critical date to constitute prior

4  art is May 8, 2010, or one year before the filing date of the claimed invention.  *See* Park

5  Assist Mot., ECF No. 142, 17-18; Indect Opp'n, ECF No. 165, 15.  In support of Indect's

6  allegation, it argues that, prior to the critical date, (1) Park Assist used a version of a

7  promotional brochure (the "M3 Brochure") and (2) an article (the "*Intertraffic* Article")

8  promoting the M3 Parking System was published in an industry magazine.  Opp'n, ECF

9  No. 165, 16-18.  Indect also argues the M3 Parking System was offered for sale before

10  the critical date.  *Id*. at 18-19.

11      Notably, Park Assist does not dispute that the method used by the M3 Parking

12  System is indistinguishable from its '956 Patent.  *See* Park Assist Mot. 142 at 18-20.

13  Instead, Park Assist argues Indect has no evidence the M3 Brochure or *Intertraffic* Article

14  were published prior to the critical date.  *Id*. at 18.  Indect responds that metadata

15  indicates the M3 Brochure was created on March 17, 2010, almost two months before the

16  critical date.  Indect Opp'n, ECF No. 165, 17.  While Park Assist argues metadata

17  showing date of creation does not prove publication, *see* Park Assist Reply, ECF No. 187,

18  6, the Court concludes that a triable issue of fact exists as to whether the M3 Brochure is

19  prior art of the '956 Patent.

20      The same holds true for the *Intertraffic* Article, published in *Intertraffic World*

21  around the critical date.  The *Intertraffic* Article, found in a printed publication and

22  written by Park Assist's CEO, describes the PASE-2 Parking System, which was later

23  renamed the M3 Parking System.  Indect Opp'n, ECF No. 165, Ex. D-2.  If published

24  before the critical date, this may serve as invalidating prior art for the '956 Patent.  *See* 35

25  U.S.C. § 102 (pre-AIA).  Park Assist contends that there is no evidence the *Intertraffic*

26  Article was distributed at the 2010 Intertraffic Trade Show, which occurred before the

27  critical date, and that "it would make more sense for the publication to be distributed after

28  the show, thus allowing it to report on the show."  Park Assist Reply, ECF No. 187, 13-

14.  The Court disagrees.  It may be more likely that the publication was produced before the Trade Show to publicize the upcoming event.  The Court need not resolve that issue now and it is better left for the jury to determine at trial.

Finally, Indect argues that the M3 Parking System is prior art because it was offered for sale before the critical date.  Indect Opp'n, ECF No. 165, 18-19.  The alleged offer for sale concerns Park Assist's bid to provide the M3 Parking System to the Cadillac Fairview Chinook Centre in Calgary, Canada.  Indect Opp'n, ECF No. 165, 15-16.  Park Assist responds that this is not prior art because the proposal cited by Indect (the "Chinook Document") is incomplete and there is no evidence the document was ever presented to the customer.  Park Assist Mot., ECF No. 142, 19.  Park Assist also contends that (1) process claims, like those at issue in the '956 Patent, cannot be the subject of an offer of sale and (2) the sale took place in Canada, making Section 102(b) inapplicable to that sale.  *Id*.  The Court agrees with Park Assist with respect to the Chinook Document.

"The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."  *Joy Techs, Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).  When evaluating whether a patented method is obvious over prior art for purposes of Section 102(b), the inquiry is not whether a product produced by the method is sold before the critical date, but whether the patented method underlying the product was disclosed or the public could learn the claimed process by examining the product.  *See W.L. Gore*, 721 F.2d at 1550.  In this case, the Chinook Document is an offer to sell a product – the M3 Parking System – not the method underlying that system.  *See* Indect Opp'n, ECF No. 165, Ex. D-3.  Indect relies on *Robotic Vision Systems, Inc. v. View Engineering, Inc.*, 249 F.3d 1307 (Fed. Cir. 2001), for the proposition that sale of a product can make the method the product uses prior art.  Indect Opp'n, ECF No. 165, 18.  However, *Robotic* is distinguishable because in that case there was evidence the co-inventor of the method explained the invention to another party and "[t]his explanation was sufficiently specific for [the other party] to understand the invention and to write the software needed to implement the method."  249 F.3d at

1311.  Here, on the other hand, Indect cannot point the Court to any evidence that Park Assist offered to explain the method underlying the M3 Parking System product to Chinook Centre.  Instead, the Chinook Document only offers the M3 Parking System, not the method the M3 Parking System relies upon.  *See* Indect Opp'n, ECF No. 165, Ex. D-3.  It follows, then, that an offer to sell the M3 Parking System as a product made before the critical date cannot form the basis for a contention that the '956 Patent's method was obvious over prior art.  *See W.L. Gore*, 721 F.2d at 1550.

### 4.    Conclusion as to validity of the '956 Patent

"Under 35 U.S.C. § 282, a patent is presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence."  *Atlas Powder*, 750 F.2d at 1573.  As set forth above, Indect has not met its burden of proving invalidity of the '956 Patent because a reasonable jury could conclude that the M3 Brochure and *Intertraffic* Article are not prior art that would render the '956 Patent obvious, and thus, invalid to a person of ordinary skill in the art.  Accordingly, the Court **DENIES** (1) Indect's Motion for Summary Judgment on its Second Claim for Relief and (2) Park Assist's Motion for Summary Judgment with respect to obviousness.

### B.    A Triable Issue of Fact Remains as to Direct Infringement

The Court next turns to the parties' cross-motions for summary judgment on Indect's First Claim for Relief and Park Assist's Second Counterclaim.  Indect's First Claim for Relief seeks a declaratory judgment that it does not infringe the '956 Patent.  SAC, ECF No. 58, ¶¶ 210-214.  Park Assist's Second Counterclaim seeks declaratory relief that Indect *does* infringe the '956 Patent.  Answer, ECF No. 68, ¶¶ 47-52.

"To prove direct infringement a patentee must establish, by a preponderance of the evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalence."  *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2020 WL 1984061, at *1 (S.D. Cal. Apr. 24, 2020) (citing *Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.* 261 F.3d 1329, 1336 (Fed Cir. 2001)).  "The patentee has the burden of proving infringement by a preponderance of

14

the evidence." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019). When seeking summary judgment of non-infringement, "nothing more is required than the filing of a motion stating that the patentee has no evidence of infringement and pointing to the specific ways in which the accused [products do] not meet the claim limitations." *Exigent Tech. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006). Because a moving party seeking a judgment of non-infringement does not "have to support its motion [for summary judgment] with evidence of non-infringement," noninfringement is more likely to be amenable to summary judgment than infringement. *Id*. at 1308-09. This is because the patent holder must show *every limitation* of a claim is found in the accused device to secure a summary judgment of infringement whereas an accused infringer need only show that its product lacks *a single limitation* to avoid infringement. *3rd Eye Surveillance, LLC v. United States*, No. 15-501C, 2020 WL 7021437, at *3 (Fed. Cl. Nov. 20, 2020).

Park Assist argues that Indect's UPSOLUT system infringes on each step of claim 1 of the '956 Patent with the sole exception of step (h), which the Court has already determined is conditional and therefore not required to be performed for infringement to occur. Park Assist Mot., ECF No. 142, 20-21. Park Assist contends that Indect's expert, Dr. Havlicek, admitted that the UPSOLUT has the capability to practice the remaining elements of claim 1. *Id*. at 21. Indect responds that its expert made no such concession, and that even if step (h) is not required for infringement, there is no evidence that Indect has ever performed steps (f), (g), (h), and (j) of the '956 Patent. Indect Mot., ECF No. 147, 14. The Court concludes a triable issue of fact on direct infringement exists.

For example, step (f) of the '956 Patent requires "displaying a thumbnail image of said parking space on a graphic user interface (GUI), said thumbnail image digitally processed from an image electronically communicated to said GUI from said imaging unit." '956 Patent, Col. 22:49-52. The Court construed "displaying a thumbnail image" as "*displaying a small near real-time image of a picture of said parking space on the computer screen*." Claims Construction Order, ECF No. 80, 13. The Court adopted this

construction because "the intent of the invention is in part to 'provide real-time feedback,'" on parking space availability.  *Id*.  In contrast, Dr. Havlicek's rebuttal report indicates that when using Indect's parking guidance system, hours or days could pass without a new picture being taken of a particular parking space.  Melgar Decl. Ex. 61, ECF No. 142-63, ¶ 105.  So long as the vehicle in the space does not move, Dr. Havlicek opines that no new image would be taken and displayed.  *Id*.  If no new image is displayed, the feedback is not "near real time," meaning UPSOLUT is not practicing step (f).  If UPSOLUT does not practice step (f) of Claim 1, it cannot infringe.  *See 3rd Eye Surveillance*, 2020 WL 7021437 at *3 (stating that the infringer's "failure to meet even one element within a claim, literally or by its substantial equivalent, negates a finding of infringement").

　　　While Park Assist responds by stating that Indect's expert, Dr. Havlicek, "admitted to the capability of the UPSOLUT system to practice element[s] (a)-(g), (i) and (j) in his expert report and/or deposition," Park Assist Mot., ECF No. 142, 21, the argument relies on a rather contorted interpretation of Dr. Havlicek's testimony.  Further, expert opinions on legal conclusions may not defeat or warrant summary judgment.  *See, e.g.*, *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) (holding "broad conclusory statements offered by Telemac's experts are not evidence and are not sufficient to establish a genuine issue of material fact").  The Court is hesitant to endorse Park Assist's argument on near real-time display at all.  Instead, it concludes there is a triable issue of fact as to whether Indect practices at least step (f) of claim 1.  Given Indict must practice each step of claim 1 to be found liable for infringement, a triable issue of material fact also exists as to whether Indect infringes on the '956 Patent.  Because a triable issue of material fact exists, the Court **DENIES** the parties cross-motions for summary judgment on Indect's First Claim for Relief and Park Assist's Second Counterclaim.

## C.    Induced Infringement of the '956 Patent

　　　The Court next turns to induced infringement.  Indect's Third Claim for Relief

1    seeks declaratory judgment that its customers do not infringe the '956 Patent.  SAC, ECF

2    No. 58, ¶¶ 220-224.  Park Assist's First Counterclaim similarly argues that Indect is

3    liable for induced infringement through installation of Indect's parking guidance system

4    at the San Diego International Airport.  Answer, ECF No. 68, ¶¶ 40-46.  While Park

5    Assist's companion suit against the airport has settled, *see* Airport Case, ECF No. 146,

6    there is nothing stopping Park Assist from bringing similar suits against Indect's

7    customers at this time.

8                    *1.    Subject matter jurisdiction exists for the induced infringement claim*

9            Indect's Third Claim for Relief seeks a declaratory judgment that the end-users of

10   its products do not infringe on the '956 Patent.  *See* SAC, ECF No. 58, ¶¶ 220-24.

11           Park Assist argues the Court lacks subject matter jurisdiction for Indect's Third

12   Claim for Relief because Indect lacks standing to bring claims on behalf of its unnamed

13   customers using Indect's parking guidance systems.  Park Assist Mot., ECF No. 142, 28.

14   Park Assist contends that because Indect sells products, and the '956 Patent has only

15   process claims, a "highly individualized inquiry" would be required to determine which,

16   if any, of Indect's customers actually performed the steps of the '956 Patent to constitute

17   infringement.  *Id*.  Indect responds that the Court has subject matter jurisdiction to

18   consider its declaratory relief claim for non-infringement by its customers because a

19   "substantial controversy" exists between the parties.  Indect Opp'n, ECF No. 165, 28-30.

20           The Court previously addressed this issue in its Order denying Indect's Motion to

21   Dismiss two of Park Assist's counterclaims, including the induced infringement

22   counterclaim.  Order, ECF No. 96.  There, the Court explained how the Declaratory

23   Judgment Act allows district courts to declare rights even if they cannot grant other relief:

24           The Declaratory Judgment Act provides that "in a case of actual
             controversy," a federal court "may declare the rights and other legal

25           relations of any interested party seeking such declaration, whether or
             not further relief could be sought."  28 U.S.C. § 2201(a).  In patent

26           cases, declaratory judgment of infringement is available when the
             defendant engages in acts "directed toward making, selling, or using

27           subject to an infringement charge under 35 U.S.C. § 271(a) . . . or [ ]

28

17

1
2
3
4
5

> making meaningful preparation for such activity," that "indicate a
> refusal to change the course of its actions in the face of acts by the
> patentee sufficient to create a reasonable apprehension that a suit will
> be forthcoming." *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761,
> 764 (Fed. Cir. 1990).  This standard allows for declaratory judgment
> in cases that, at first glance, may appear to seek an advisory opinion
> based on hypothetical, future conduct.

6    *Id.* at 3.  At that time, Indect sought to dismiss Park Assist's counterclaims for induced

7    infringement by arguing Park Assist sought relief for future, speculative harm.  *Id.*  Now,

8    the shoe appears to be on the other foot, and Park Assist seeks to use the Court's order in

9    its favor as a sword against Indect's Third Claim for Relief.  Park Assist seeks to dismiss

10    Indect's claim for declaratory relief that it does not commit induced infringement on the

11    basis that such a claim is too speculative.  Park Assist Mot., ECF No. 142, 28.  While the

12    parties' positions have changed, the Court's analysis has not.

13        Under the AIA, "[w]hoever actively induces infringement of a patent shall be

14    liable as an infringer." 35 U.S.C. § 271(b).  In other words, and as applies to this case, if

15    Indect induces its customers to infringe on Park Assist's '956 Patent by using its

16    program, Indect is liable to Park Assist for those customers' infringement.  In order to

17    prevail on a claim of induced infringement, a patent holder must come forward with

18    evidence of (1) acts of direct infringement of a patent by the defendant or third-party (in

19    this case, Indect's customers' use of UPSOLUT); (2) the defendant knowingly inducing

20    infringement by taking "affirmative steps to bring about the desired result" (*i.e.*, Indect

21    encouraging its customers to use UPSOLUT in a configuration that infringes the '956

22    Patent); and (3) the defendant's knowledge that the acts it induced would result in patent

23    infringement.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760-61, 766

24    (2011) ("Accordingly, we now hold that induced infringement under § 271(b) requires

25    knowledge that the induced acts constitute patent infringement.").  "While proof of intent

26    is necessary, direct evidence is not required; rather, circumstantial evidence may

27    suffice." *Id.* (quoting *Water Techs. Corp v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir.

28    1988)).

Here, the induced infringement claim remains "a case of actual controversy." 28 U.S.C. § 2201(a). The parties are direct competitors in the field of parking guidance systems, and Park Assist has sent letters to some of Indect's potential customers "threaten[ing] potential customers against using Indect's product." Order, ECF No. 26, 11 n.3. To the extent Park Assist argues its claims relating to Indect's potential customers who did not receive those letters should be treated differently, it is a meaningless distinction. Were these claims dismissed today, Park Assist could send threatening letters to Indect's customers and potential customers tomorrow.

"*MedImmune* [*Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)] adopted an 'adverse legal interest' requirement" for analyzing whether a case or controversy exists in the patent context. *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011). "An 'adverse legal interest' requires a dispute as to a legal right – for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." *Id.* "[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if . . . there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Id.* at 1375. The reason for this is that if the end customers were found liable, the supplier would be obligated to indemnify its customers from infringement liability. *Id.* As a result, the law allows the supplier to "stand in the shoes of the customers" by representing their interests due to the supplier's legal obligation to indemnity. *Id.*

That is exactly the case here. Park Assist has accused Indect's customers of direct infringement, resulting in a controversy existing between Park Assist and Indect regarding Indect's liability for induced infringement based on Indect's customers' direct infringement. Thus, Indect has standing to bring its declaratory claim for non-infringement by its customers. Park Assist's Motion to Dismiss Indect's Third Claim for Relief is **DENIED**.

### 2.     Park Assist's First Counterclaim is dismissed

Indect moves for summary judgment on Park Assist's First Counterclaim, which alleges "Indect induced and continues to induce infringement of the '956 Patent under 35 U.S.C. § 271(b) by supplying its UPSOLUT system" for the parking system operated at the San Diego International Airport.  Answer, ECF No. 68, ¶ 42.  As noted above, Park Assist's suit against the airport has now settled, and Park Assist has provided no evidence the parking guidance system installed at the airport infringes the '956 Patent.

"[L]iability for induced infringement must be predicated on direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014).  "To prove direct infringement a patentee must establish, by a preponderance of the evidence, that one or more claims of the patent read on the accused device literally or under the doctrine of equivalence."  *NuVasive*, 2020 WL 1984061, at *1.

In response to Indect's Motion for Summary Judgment on the First Counterclaim, Park Assist provides no evidence that the airport installation actually infringed the '956 Patent.  Instead, Park Assist attempts to side-step this deficiency by arguing that Indect's installation at the airport is "not part of Park Assist's case or this case at all."  Park Assist Opp'n, ECF No. 159, 18.  Not so.  *See* Answer, ECF No. 68, ¶ 42.  Park Assist's First Counterclaim alleges Indect induced infringement relying solely on Indect's installation at the airport.  Despite this reliance, Park Assist has not provided any evidence that system – as used at the airport – infringes the '956 Patent.

Accordingly, the Court **GRANTS** Indect's Motion for Summary Judgment as to Park Assist's First Counterclaim for induced infringement of the '956 Patent.  Park Assist's First Counterclaim is dismissed *with prejudice*.

### 3.     Park Assist's Third Counterclaim is dismissed

Both parties appear to move for summary judgment on Indect's Third Claim for Relief and Park Assist's Third Counterclaim, which seek declaratory relief that Indect does or does not induce infringement of the '956 Patent by selling its UPSOLUT system when configured to perform all the steps of claim 1 of the '956 Patent.  Indect Mot., ECF

No. 147, 15-16; Park Assist Mot., ECF No. 142, 23-27.  However, Park Assist argues in opposition to Indect's Motion for Summary Judgment that "it is not aware of any other infringers and has not accused Indect of inducement with respect to other customers, so there can be no actual controversy with respect to induced infringement and any other customers."  Opp'n, ECF No. 159, 23-24.  Thus, it appears Park Assist no longer moves for summary judgment on its Third Counterclaim and instead argues dismissal of its own counterclaim is appropriate.  The Court agrees dismissal is appropriate, but as explained below, it does so only after granting summary judgment in Indect's favor.

Federal courts may only hear cases or controversies.  U.S. Const. art. III, § 2.  "The Declaratory Judgment Act authorizes this Court to issue judicial decisions as a remedy, 28 U.S.C. § 2201(a), but only where a justiciable controversy exists."  *Gen. Elec. Co. v. NeuroGrafix*, Case No. 2:12-CV-04586-MRP-RZ, 2012 WL 13013132, at *1 (C.D. Cal. Aug. 16, 2012), *adhered to on reconsideration*, No. 2:12-CV-04586-MRP, 2012 WL 12888331 (C.D. Cal. Sept. 28, 2012).  "A justiciable controversy exists where alleged facts, under all circumstances, show a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality."  *Id*. (citing *MedImmune*, 549 U.S. at 127.  "[F]ollowing *MedImmune*, proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).  Indect has done so here.

First, Indect has been sued for direct and induced infringement.  *See* Answer, ECF No. 68, ¶¶ 40-46, 53-58.  Second, Indect has provided evidence that Park Assist sent letters to Indect's potential customers warning those potential customers that doing business with Indect could expose those customers "to liability for actual damages, treble damages for willfully infringement [sic] and injunctive relief against the sale or use of the infringing systems."  *See, e.g.,* Storm Decl. Ex. 25, ECF No. 168-2.

No bright line rule establishes when the case or controversy requirement is met.

21

*MedImmune*, 549 U.S. at 127.  "The analysis must be calibrated to the particular facts of each case."  *Prasco*, 557 F.3d at 1336.  Here, Indect's alleged injury for which it seeks declaratory judgment that it has not induced infringement is "based on a *real* and *immediate* injury or threat of future injury" caused by Park Assist.  *Id*. at 1339 (emphasis in original).  As Indect notes, Park Assist could have sought voluntary dismissal of its Third Counterclaim pursuant to Federal Rule of Civil Procedure 41, but Park Assist has not done so.  Indect Reply, ECF No. 183, 5.  Instead, after extensive discovery and litigation, Park Assist now argues the Court lacks jurisdiction to hear this counterclaim. Given Park Assist's conduct and Indect's real and immediate liability for induced infringement unrelated to the airport, the Court concludes that the case or controversy requirement is met as to Park Assist's Third Counterclaim.

The remaining question is whether the Court should grant Indect's Motion for Summary Judgment as to its Third Claim for Relief and Park Assist's Third Counterclaim for induced infringement.  As with the First Counterclaim discussed above, Park Assist provides no evidence Indect has or "will induce infringement of the '956 Patent under 35 U.S.C. § 271(b) by continuing to supply future customers with its UPSOLUT system that could be configured to perform the steps that infringe the '956 Patent when the systems are in operation."  Answer, ECF No. 68, ¶ 54.  "The patentee has the burden of proving infringement by a preponderance of the evidence."  *Eli Lilly*, 933 F.3d at 1328.  Park Assist has not met that burden with respect to induced infringement in Indect's Third Claim for Relief or its own Third Counterclaim.

Accordingly, the Court **GRANTS** Indect's Motion for Summary Judgment on its Third Claim for Relief and Park Assist's Third Counterclaim for induced infringement. Due to the absence of evidence in Park Assist's favor, a reasonable jury could not conclude that Indect has induced infringement of the '956 Patent.  Thus, no genuine issue of fact exists as to that issue, and the Court grants judgment in favor of Indect and against Park assist as to Indect's Third Claim for Relief and Park Assist's Third Counterclaim.

**D.     A Triable Issue of Fact Remains as to Indect's Fourth Claim for Relief for Unfair Competition**

Indect's Fourth Claim for Relief alleges Park Assist violated the Lanham Act (1) by disparaging Indect and its products in the marketplace "with objectively baseless claims of patent infringement" and (2) through threats of litigation, and later, sham litigation. *See* SAC, ECF No. 58, ¶¶ 225-31.  Indect argues that although Park Assist allegedly knew there was no basis for infringement allegations, Park Assist nonetheless proceeded with the Airport Case and contacted Indect's potential customers about the same.  Indect Opp'n, ECF No. 165, 5-6.  Indect seeks damages for unfair competition, as well as an injunction "prohibiting Park Assist from continuing to engage in such wrongful conduct."  SAC, ECF No. 58, ¶ 231.

To prove a violation of the Lanham Act, a plaintiff must prove five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)).

Park Assist moves for summary judgment on this claim, arguing that (1) its patent enforcement actions are immune from liability absent bad faith and (2) Indect cannot show Park Assist proximately caused damages or materially affected customer purchasing decisions.  Park Assist Mot., ECF No. 142, 9-16.  The Court addresses these arguments in turn.

### 1.     *Park Assist may have acted in bad faith*

Park Assist argues the Court should grant summary judgment because its efforts to

protect the '956 Patent are immune from liability under *Noerr-Pennington* doctrine absent a showing of bad faith, which Indect cannot prove.  Park Assist Mot., ECF No. 142, 9-10.  Indect responds that the record contains ample evidence of Park Assist's bad faith.  Indect Opp'n, ECF No. 165, 7-8.

To avoid summary judgment, a party claiming bad faith patent enforcement, like Indect, "must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial."  *Springs Window Fashions LP v. Novo Inds., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003) (concluding that the defendant "failed to meet its burden of putting forward affirmative evidence of bad faith.").

Under *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  The Ninth Circuit has also observed that litigation activities constituting "communication to the court" may be fairly construed as petitioning activity for purposes of *Noerr-Pennington* doctrine.  *Id*. at 933. However, *Noerr-Pennington* doctrine does not protect sham petitions.  *Id*. at 930.  In the context of civil litigation, a "sham petition" is one that is so objectively baseless that "no reasonable litigant could realistically expect success on the merits."  *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2008) (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).

Outside the context of litigation that may be protected by *Noerr-Pennington* doctrine, the Federal Circuit has observed that "before a patentee may be held liable under [the Lanham Act] for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith."  *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).  "Bad faith includes separate objective and subjective components."  *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

As pertains to this case, resolution of Park Assist's Motion for Summary Judgment as to Indect's Fourth Claim for Relief turns largely on whether Park Assist (1) pursued the Airport Case in an objectively baseless manner and (2) took other marketplace actions in bad faith.

Indect argues that the Airport Case was objectively baseless because at the time Park Assist filed suit in the Airport Case, Park Assist knew or should have known that the airport's parking system did not infringe the '956 Patent because the airport did not implement a preferred parking system as required to practice steps (i) and (j) of the '956 Patent.  Indect Opp'n, ECF No. 165, 12.  Indect further alleges that this fact "was publicly observable to anyone willing to look." *Id*.  Thus, Indect reasons, the Airport Case was objectively baseless.  *Id*.  It was also subjectively baseless, Indect argues, because "all of this evidence and information . . . was available to Park Assist, and its counsel, when [the parties in the Airport Case previously litigated the Rule 11 Motion.]" *Id*. at 13.  In opposition, Park Assist relies heavily on the Court's decision to deny sanctions in the Rule 11 dispute as a basis for this Court finding the Airport Case was not objectively baseless.  *See* Park Assist Reply, ECF No. 187, 2.  This reliance is misplaced.

The Court based its decision in the Rule 11 motion in the Airport Case on the evidence before it at the time, and, though similar language is used by both tests, a different legal standard to the bad faith analysis.  Though Park Assist also contends there is additional evidence to support its claim against the airport, the Court finds that Indect has at least created a triable issue of fact as to whether Park Assist's continued pursuit of the Airport Case was objectively baseless.

Turning to Park Assist's other marketplace actions, Indect points to a host of emails and letters to consultants in the industry and potential clients that show Park Assist may have engaged in bad faith competition by overstating the reach of the '956 Patent. *See, e.g.*, Storm Decl. Exs. 18-23, ECF Nos. 167-16 to 167-20.  Park Assist responds by arguing that its efforts to merely protect its intellectual property cannot form a basis for liability.  Park Assist Mot., ECF No. 142, 9 (citing *Virtue v. Creamery Package Mfg. Co.*,

227 U.S. 8, 37-38 (1913)).  However, Indect points to letters sent by Park Assist that suggest Park Assist may have held itself out to be "the exclusive source of a certain type of product because of its patent," and the Federal Circuit has found such conduct actionable under the Lanham Act.  *See Zenith*, 182 F.3d at 1344.

Accordingly, the Court concludes a triable issue of fact exists as to whether Park Assist acted in bad faith.  However, the Lanham Act also requires as a plaintiff to prove that the plaintiff "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products."  *Southland Sod*, 108 F.3d at 1139.  If Indect has not provided evidence of such damages, summary judgment of this claim might be appropriate.  Thus, the Court continues its analysis.

### 2.    *Park Assist may have caused Indect's damages*

Park Assist argues summary judgment is also appropriate because there is no evidence that it caused Indect's damages or that Indect's potential customers relied on Park Assist's statements about the '956 Patent when making purchasing decisions.  Park Assist Mot., ECF No. 142, 11-16.  Indect responds that it has put forth such evidence.  Indect Opp'n, ECF No. 165, 8-12.

A false statement is "material" if "it is likely to influence [a customer's] purchasing decision."  *Southland Sod*, 108 F.3d at 1139.  As discussed above, Indect points to several letters sent by Park Assist to industry consultants and potential customers that suggest choosing an Indect parking guidance system could expose customers to legal liability.  *See, e.g.*, Storm Decl. Exs. 18-23, ECF Nos. 167-16 to 167-20.  Moreover, Indect has produced evidence suggesting that Park Assist not only warned one potential customer of this liability, but also agreed to indemnify that customer "against any intellectual property claims resulting from the use of the Part Assist system."  Storm Decl. Ex. 46, ECF No. 170-3.  Thus, there is at least a triable issue of fact as to whether Park Assist wielded a patent litigation immunity shield as a sword towards some of Indect's customers, and some evidence that at least one customer made a purchasing

1    decision on this basis.

2              **3.      *Conclusion as to unfair competition***

3        The Court concludes triable issues of fact remain on whether Park Assist (1) acted

4    in bad faith or (2) undertook actions that may have impacted consumer decisions and

5    caused damages.  Accordingly, it **DENIES** Park Assist's Motion for Summary Judgment

6    on Indect's Fourth Claim for Relief.

7         **E.    Request for Judicial Notice**

8        Indect's First Request for Judicial Notice in Support of Plaintiff's Motion for Partial

9    Summary Judgment asks the Court to take judicial notice of (1) **Exhibit A-1** attached to

10   the Storm Declaration filed with Indect's Partial Motion for Summary Judgment, which is

11   a true and correct copy of U.S. Patent No. 9,594,956; (2) **Exhibit A-22** attached to the

12   Storm Declaration filed with Indect's Partial Motion for Summary Judgment, which is a

13   true and correct copy of excerpts to the prosecution history of the U.S. Patent No.

14   9,594,956; and (3) the Notice of Voluntary Dismissal entered in the case *Park Assist, LLC*

15   *v. San Diego County Regional Airport Authority et al*, Case No. 18-CV-2068-BENDEB

16   (Dkt. No. 146).  ECF Nos. 148, 149-2.  Indect's Second Request for Judicial Notice asks

17   the Court take judicial notice of (1) **Exhibit D-43** attached to the Storm Declaration filed

18   with Indect's Response to Defendant's Motion for Partial Summary Judgment, which is a

19   true and correct copy of U.S. Patent Application No. 2008/0258935 ("**Lee application**");

20   (2) **Exhibit D-44** attached to the Storm Declaration filed with Indect's Response to

21   Defendant's Motion for Partial Summary Judgment, which is a true and correct copy of

22   U.S. Patent Application No. 2009/0192950 ("**King application**"); and (3) **Exhibit D-45**

23   attached to the Storm Declaration filed with Indect's Response to Defendant's Motion for

24   Partial Summary Judgment, which is a true and correct copy of excerpts to the prosecution

25   history of the U.S. Patent No. 9,594,956.  ECF No. 157.  Both requests are unopposed.

26       Rule 201(b) of the Federal Rules of Evidence allows courts, at any stage of

27   proceeding, to take judicial notice of (1) facts not subject to reasonable dispute and

28   "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts,

which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See also Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290, fn. 1 (9th Cir. 1996) (taking judicial notice of court records); *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 746 (8th Cir. 1996) (holding that the district court did not err by taking judicial notice of pleadings in earlier related proceedings).

The Court concludes these materials are appropriate for judicial notice because they are not subject to reasonable dispute and their accuracy cannot be reasonably questioned. Thus, the Court **GRANTS** Indect's Requests for Judicial Notice.

## IV.  CONCLUSION

For the foregoing reasons the Court rules as follows:

1.     Indect and Park Assist's Cross-Motions for Summary Judgment on Indect's First Claim for Relief for a declaratory judgment of non-infringement as to Park Assist's '956 Patent are **DENIED**.

2.     Indect and Park Assist's Cross-Motions for Summary Judgment on Indect's Second Claim for Relief for a declaratory judgment of invalidity as to Park Assist's '956 Patent are **DENIED**.

3.     Park Assist's Motion to Dismiss Indect's Third Claim for Relief for declaratory relief regarding non-infringement of Park Assist's '956 Patent by Indect's users is **DENIED**.

4.     Indect's Motion for Summary Judgment on its Third Claim for Relief and Park Assist's Third Counterclaim for declaratory judgment of induced infringement of the '956 Patent is **GRANTED**.  The Court grants judgment in favor of Indect and against Park Assist as to (1) Indect's Third Claim for Relief for non-infringement of Park Assist's '956 Patent by Indect's users and (2) Park Assist's Third Counterclaim for a declaratory judgment of induced infringement of the '956 Patent.  Both claims are dismissed *with prejudice*.

5.     Park Assist's Motion for Summary Judgment on Indect's Fourth Claim for Relief for Unfair Competition is **DENIED**.

6.      Indect's Motion for Summary Judgment Park Assist's First Counterclaim for induced infringement of the '956 Patent is **GRANTED**.  The Court grants judgment in favor of Indect and against Park Assist as to Park Assist's First Counterclaim dismisses that counterclaim *with prejudice*.

7.      Indect's Motion for Summary Judgment on Park Assist's Second Counterclaim for declaratory judgment of direct infringement is **DENIED**.

8.      Indect's Request for Judicial Notice, ECF Nos. 148 and 157, are **GRANTED**.

Thus, following summary judgment, the Court grants summary judgment in Indect's favor as to (1) its Third Claim for Relief and (2) Park Assist's First and Third Counterclaims.  The following claims remain for trial in this matter: (1) Indect's First, Second, and Fourth Claims for Relief as well as (2) Park Assist's Second Counterclaim.

**IT IS SO ORDERED.**

Dated: July 28, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

3:18-cv-02409-BEN-DEB