UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDECT USA CORP., a Texas corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>PARK ASSIST, LLC, a Delaware limited liability company,<br><br>　　　　　　　　Defendant.<br><br>PARK ASSIST, LLC, a Delaware limited liability company,<br><br>　　　　　　　　Counterclaimant,<br><br>　v.<br><br>INDECT USA CORP., a Texas corporation,<br><br>　　　　　　　　Counterdefendant. | Case No.: 18-cv-02409-BEN-DEB<br><br>**ORDER ON:**<br><br>**(1) PLAINTIFF'S MOTION TO PRECLUDE EXPERT TESTIMONY OF MATTHEW A. TURK;**<br>**(2) ASSOCIATED MOTIONS TO FILE UNDER SEAL**<br><br>**[ECF Nos. 138, 139, 155]** |

　　　This case arises out of a lawsuit filed by Plaintiff Indect USA Corp. ("Indect") seeking a declaratory judgment that neither Indect nor the users of its products infringed on claims of U.S. Patent Number 9,594,956 (the "956 Patent") owned by Defendant Park Assist, LLC ("Park Assist"). Second Amended Complaint ("SAC"), ECF No. 58, ¶ 6. The matter comes before the Court on Park Assist's Motion to Preclude Expert

Testimony of Matthew A. Turk (the "Motion") as well as the parties' accompanying motions to file matters under seal. ECF Nos. 138, 139, 155.

Based on the parties' briefs, evidence submitted, and applicable law, the Court denies Park Assist's Motion to preclude Dr. Turk's expert testimony. The Court grants the parties' motions to file documents associated with the subject Motion under seal.

## I. BACKGROUND

In his expert report, Dr. Turk determined Park Assist's '956 Patent is invalid due to obviousness. ECF No. 140, Ex. B (hereinafter "Turk Report"), ¶ 87. Park Assist seeks to preclude Dr. Turk's testimony on the grounds that Dr. Turk "fails to provide any legally adequate opinion regarding how or why the prior art references would be combined." ECF 138, at 6.

## II. LEGAL STANDARDS

### A. Expert Witnesses

Federal Rule of Evidence 702 establishes several requirements for admissibility of expert opinion evidence: (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge must assist the trier of fact either "to understand the evidence" or "to determine a fact in issue"; (3) the testimony must be "based on sufficient facts and data"; (4) the testimony must be "the product of reliable principles and methods"; and (5) the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702.

Under *Daubert* and its progeny, the trial court is tasked with assuring that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted). Shaky but admissible

evidence is to be attacked by cross-examination, contrary evidence, and careful instruction on the burden of proof, not exclusion. *Daubert*, 509 U.S. at 596.  The judge is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  In its role as gatekeeper, the trial court "is not tasked with deciding whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury."

The tests for admissibility in general, and reliability, are flexible. *Primiano*, 598 F.3d at 564.  The Supreme Court has provided several factors to determine reliability: (1) whether a theory or technique is testable; (2) whether it has been published in peer reviewed literature; (3) the error rate of the theory or technique; and (4) whether it has been generally accepted in the relevant scientific community. *Mukjtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) (summarizing *Daubert*, 509 U.S. at 592-94), *overruled on other grounds by Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014).  These factors are meant to be "helpful, not definitive." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).  The court "has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted).

"[T]he test under *Daubert* is not the correctness of [experts'] conclusions but the soundness of [their] methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).  Once the threshold established by Rule 702 is met, the expert may testify, and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 565.

After admissibility is established to the court's satisfaction, attacks aimed at the weight of the evidence are the province of the fact finder, not the judge. *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014).  The court should not make credibility determinations that are reserved for the jury. *Id.*

### B. Patent Invalidity by Obviousness

Under the U.S. Patent Act, an invention cannot be patented if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). A party seeking to invalidate a patent based on obviousness must demonstrate "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1361 (Fed. Cir. 2007). The obviousness determination turns on underlying factual inquiries involving: (1) the scope and content of prior art, (2) differences between claims and prior art, (3) the level of ordinary skill in pertinent art, and (4) secondary considerations such as commercial success and satisfaction of a long-felt need. *Procter & Gamble Co. v. Teva Pharm. USA, Inc.,* 566 F.3d 989, 994 (Fed. Cir. 2009).

## III. DISCUSSION

### A. Testimony of Dr. Matthew Turk

Park Assist seeks preclusion of Dr. Turk's testimony for several reasons: (1) there is no evidence of motivation to combine, (2) the analysis fails to show how references could be combined, and (3) the analysis improperly combines multiple references. This Court disagrees with Park Assist and finds preclusion improper.

#### i.   Evidence of Motivation to Combine

Park Assist asserts the statements in Dr. Turk's report are formulaic and amount to nothing more than conclusory analysis. ECF No. 138, 2. Park Assist further avers Dr. Turk's testimony is completely generic due to the same standard approach he took in evaluating the combinations in his report. *Id.* at 4. Park Assist argues generic approaches like this have consistently been rejected by the Federal Circuit because "recognizing a need or problem to be solved is very different from a motivation to combine references." *Id.*

In support of its argument, Park Assist cites *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.* (694 F.3d 1312 (Fed. Cir. 2012)). In *ActiveVideo*, the District Court found the expert's testimony on obviousness to be conclusory when he testified, "[t]hese are all components that are modular, and when I add one, it doesn't change the way the other works." *Id.* at 1327. The Federal Circuit found this testimony "failed to explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claims." *Id.* The present case differs in two critical ways, though. First, *ActiveVideo* was decided on a Judgement as a Matter of Law (JMOL) motion. While this testimony failed to persuade ultimately, Verizon's expert was still allowed to testify. Second, Dr. Turk's analysis goes far beyond the generic "desire for improvement" the District Court found unpersuasive in *ActiveVideo*. Dr. Turk's report identifies specific elements and combines multiple references in great detail while analyzing five separate claims for obviousness. Turk Report, ¶¶ 88-188. Dr. Turk's analysis is not conclusory, and this Court finds cross-examination the appropriate avenue for Park Assist to challenge Dr. Turk's methodology and conclusions.

Park Assist further alleges that Dr. Turk's analysis cannot point to a motivation for improvement, which is a requirement for showing obviousness. ECF 138, at 3. Again, Park Assist cites *ActiveVideo*. There, Verizon's expert testified, "[t]he motivation to combine would be because you want to build something better . . . by combining these two things you could do something new that [you] hadn't been able to do before." *ActiveVideo* at 1328. Dr. Turk's report, by comparison, goes into significantly greater detail in its analysis and explains with specificity the improvement sought for each referenced item. *See*, Turk Report ¶¶ 88-188. Moreover, there is no requirement for explicit motivation to be stated to combine prior art references. *See, KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 419-22 (2007).

Also, as stated above, the court heard the expert's testimony in *ActiveVideo*, but certain claims were adjudicated via JMOL, suggesting it was appropriate for the fact

finder to hear the expert testimony even if it ultimately proved unpersuasive.

"The motivation to combine prior art references can come from the knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved." *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1375 (Fed. Cir. 2020). On its face, Dr. Turk's report meets these criteria. His report contains analysis Park Assist can test or contest about the motivation a person of ordinary skill in the art would have to combine prior art references. Park Assist can challenge Dr. Turk using cross-examination or its own evidence, as other courts have found when addressing factual issues on motivating prior artwork. *See, e.g.*, *Cellular Communs. Equip., LLC v. Apple Inc.*, No. 6:14-cv-251, 2016 WL 6884076, at *3 (E.D. Tex. Aug. 30, 2016); *Equistar Chemicals, LP v. Westlake Chem. Corp.*, 6:14CV68, 2016 WL 4410050, at *3 (E.D. Tex. Feb. 26, 2016).

    ii. <u>Evidence Showing How References Can Be Combined</u>

Beyond analysis requiring evidence of motivation to combine, obviousness also requires some teaching of how the references could be combined to work together. *See*, *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010). Here, Park Assist asserts Dr. Turk simply cherry picks elements from various references, gives no second thought about technical problems or challenges that may arise, and is not clear as to how his proposed combinations would work. ECF No. 138, at 9-10. This Court disagrees.

Dr. Turk's report provides detailed analysis that could assist a jury in determining the question of invalidity of the '956 Patent for obviousness. As this Court stated in Section III(a)(i), *supra*, Dr. Turk's report references primary and secondary sources in analyzing the obviousness issues and demonstrates how a person of ordinary skill in the art could use the references to combine them and improve existing ideas. Moreover, the combined references are all in the field of camera-based parking management systems. From their pleadings, it appears Park Assist's disagreements are with the conclusions drawn by Dr. Turk and his methodology in reaching said conclusions. This goes towards

the weight, not the admissibility, of Dr. Turk's testimony and, as previously stated, can be addressed during cross-examination or with other evidence.

### iii. Alleged Improper Combination of References

One of the selections of artwork Dr. Turk analyzed in his obviousness analysis is the "M3 Product." Regarding the M3 Product, the parties disagree on how the product has evolved and whether Dr. Turk should have addressed the evolution. Park Assist claims, "Dr. Turk treats multiple different references related to the M3 Product as a single article – drawing his analysis from whichever reference he believes best shows a given claim element . . . Dr. Turk is thus using his single "M3" reference [as] a mishmash of different references, without any word of why this is proper and without discussing any motivation to combine these multiple M3 references." ECF No. 138, at 14. Indect argues,

> "Park Assist cannot claim that all of the documents that constitute the M3, as set forth in Dr. Turk's report are about a different product – they all disclose feature of the M3 sold by Park Assist before the priority date of the '956 patent. As such, there is nothing to combine, the documents are neither describing different products offered by Park Assist, nor describing products from Park Assist and another source."

ECF No. 164, at 20. The parties' pleadings yet again indicate a reasonable disagreement on Dr. Turk's methodology and the conclusions he reaches which are subjects appropriate for cross examination. Park Assist fails to persuade this Court that exclusion is necessary under Federal Rule of Evidence 702 or *Daubert*.

Park Assist claims Indect is attempting to persuade this Court to forego its responsibilities under *Daubert* and "leave it to Park Assist to address the baseless Turk opinion with cross examination." ECF No. 138, at 8. In support of this claim, Park Assist cites *Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008) and *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2017 U.S. Dist. LEXIS 217136, *9-10 (C.D. Cal. Oct. 6, 2017). In *Innogenetics*, the Federal Circuit found the district

court did not abuse its discretion in precluding expert testimony on obviousness when the expert "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious to perform' . . . ." *Innogenetics* at. 1373.  The court stated, "nowhere does [the expert] state how or why a person ordinarily skilled in the art would have found the claims of the [] patent obvious in light of some combination of those particular references." *Id.* at 1373.  In *Deckers*, the expert proffered that it would have been obvious to modify the reference, but did not state why or provide any motivation. *Deckers* at 9-10.

Having reviewed the Turk Report, this Court finds it offers far more than the conclusory statements described in *Innogenetics* and *Deckers*.  Dr. Turk's report describes with specificity how the prior art references can be combined and identifies the limitations taught by each primary reference and secondary reference.  This goes well beyond conclusory statements and provides the factfinder evidence which may support Indect's claims of obviousness.

      iv. <u>Scope of Testimony</u>

"The ultimate test of patent invalidity is one of law . . . but resolution of the obviousness issue necessarily entails several basic factual inquiries." *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280 (1976).  To the extent that an expert purports to offer a legal opinion on an ultimate issue, such testimony must be excluded because "offering legal conclusion testimony invades the province of the trial judge." *Nationwide v. Kass Info. Sys., Inc.,* 523 F.3d 1051, 1059 (9th Cir. 2008); *Mukhtar,* 299 F.3d at 1066 n.10 ("[A]n expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.").  While expert testimony can be used to provide evidence of the state of the art, how one of ordinary skill in the art would understand the prior art references, and whether one of ordinary skill in the art would have been motivated to combine or modify prior art references in a manner that yields the claimed invention, it is improper to provide testimony that is merely a legal conclusion.

Having reviewed the Turk Report, this Court concludes it passes muster under the

reliability and relevance requirements of *Daubert* and Rule 702.  Therefore, Park Assist's request to preclude Dr. Turk's testimony entirely is denied.  Dr. Turk's testimony, however, must not serve as a substitute for jury instructions on obviousness or make conclusory statements that the '956 patent should be invalidated on obviousness grounds.

### B. Motions to Seal

Concurrent with the parties' briefing on the Turk Motion to Preclude, the parties move to file under seal portions of their briefs, declarations, and supporting exhibits.  The selections contain, reference, or discuss commercially sensitive and proprietary business data.  The documents have been previously designated "Confidential," "Confidential – For Counsel Only," or "Confidential – For Counsel Only – Prosecution Bar" pursuant to the Protective Order issued in this case.  *See* ECF No. 43.  Specifically, these selections ostensibly contain business information including trade secrets, confidential research, and other financial or commercial information.

"[C]ompelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might . . . become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  A "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  The Court can seal proprietary information to protect a business from potential harm.  *See Obesity Research Institute, LLC v. Fiber Research International, LLC*, No. 15-CV-00595-BAS-MDD, 2017 WL 6270268, at *2 (S.D. Cal. Dec. 8, 2017) (granting motion to file documents containing proprietary business information under seal).

Accordingly, the motions to seal are granted.  Redacted versions of the aforementioned documents have been filed on the public docket.  The Clerk is directed to file unredacted versions of the documents and exhibits lodged at Docket Numbers 140 and 163 under seal.

### IV. CONCLUSION

Park Assist's Motion to Preclude Expert Testimony of Dr. Matthew Turk is **DENIED**. The parties' motions to file their pleadings related to the subject *Daubert* motion are **GRANTED**.

**IT IS SO ORDERED.**

Dated: September 24, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge